1  GREGORY A. LONG, Cal. Bar No. 57642
   E-mail: glong@sheppardmullin.com
2  GARY A. CLARK, Cal. Bar No. 65455
   E-mail: gclark@sheppardmullin.com
3  DENNIS J. SMITH, Cal. Bar No. 233842
   E-mail: djsmith@sheppardmullin.com
4  DANIEL C. MUNIZ, Cal. Bar No. 240477
   E-mail: dmuniz@sheppardmullin.com
5  BRIDGETTE A. AGNESS, Cal. Bar No. 221900
   E-mail: bagness@sheppardmullin.com
6  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
7     Including Professional Corporations
   333 South Hope Street, 48th Floor
8  Los Angeles, California 90071-1448
   Telephone: (213) 620-1780
9  Facsimile: (213) 620-1398

10 Attorneys for Defendants and Counterclaimants
   ENDICIA, INC. and PSI SYSTEMS, INC.

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                   WESTERN DIVISION

14

15 STAMPS.COM, INC.,                    | Case No. CV 06-7499 ODW (CTx)

16              Plaintiff,              | Hearing
                                        | Date: February 25, 2008
17       v.                             | Time: 1:30 p.m.
                                        | Ctrm: 11, Hon. Otis D. Wright II
18 ENDICIA, INC., and PSI SYSTEMS,
   INC.,                                | **DEFENDANTS ENDICIA, INC.
                                        | AND PSI SYSTEMS, INC.'S
19              Defendants.             | AMENDED NOTICE OF MOTION
                                        | AND MOTION FOR SANCTIONS,
20                                      | INCLUDING STRIKING OF
                                        | PORTIONS OF PLAINTIFF
21                                      | STAMPS.COM INC.'S
                                        | COMPLAINT AND MONETARY
22                                      | SANCTIONS AGAINST
                                        | PLAINTIFF AND ITS COUNSEL**
23
                                        | [FED. R. CIV. P. 11(b)(1)-(3), (c)]
24
                                        | [(1) Memorandum of Points and
25                                      | Authorities in Support; (2) Smith
                                        | Declaration with Exhibits; (3)
26                                      | Montgomery Declaration; and (4)
                                        | Proposed Order Submitted Concurrently
27                                      | Herewith]
   _____
28 AND RELATED COUNTERCLAIMS.

                              -1-

1  **TO THE ABOVE CAPTIONED COURT AND TO THE PLAINTIFF AND**
2  **ITS ATTORNEYS OF RECORD**:

3        **PLEASE TAKE NOTICE** that on Monday, February 25, 2008 at
4  1:30 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the
5  Hon. Otis D. Wright II in the above entitled Court, located at Courtroom 11, United
6  States Courthouse, 312 North Spring Street, Los Angeles, California 90012, the
7  Defendants Endicia, Inc. and PSI Systems, Inc. will bring on for hearing the
8  following motion.

9

10                          **MOTION**

11        The Defendants hereby move for sanctions, including an order striking
12  all references to U.S. Patent Nos. 5,510,992; 5,682,318; and 5,819,240 (the
13  "Portable Storage Patents") in the complaint filed by the Plaintiff with prejudice and
14  imposing monetary sanctions against the Plaintiff and its attorneys of record equal to
15  the Defendants' costs and attorneys' fees associated with preparing and arguing this
16  Motion and otherwise addressing the Portable Storage Patents, pursuant to Rule
17  11(b)(1)-(3),(c). The grounds for this motion are that the infringement allegations
18  concerning the Portable Storage Patents in the Plaintiff's Complaint are frivolous
19  and do not have evidentiary support, nor will the Plaintiff be able to provide
20  evidentiary support through further investigation and discovery.

21        This Motion is being served pursuant to Rule 5 on January 3, 2008, and
22  will be filed no sooner than at least twenty-one (21) days after such service, as
23  required by Rule 11(c)(1)(A), in order to allow the Plaintiff and its counsel time to
24  withdraw all infringement claims based on the Portable Storage Patents.

25        In support of this motion, the Defendants rely on the Memorandum of
26  Points and Authorities In Support submitted herewith, the declaration of Dennis J.
27  Smith with exhibits thereto submitted herewith, the declaration of Scott
28  Montgomery submitted herewith, the pleadings on file in this action, such matters of

AMENDED NOTICE OF MOTION AND MOTION FOR
RULE 11 SANCTIONS

1 which this Court may take judicial notice, and such other matters as may be
2 presented to the Court in connection with this motion.

3

4 Dated:  January 24, 2008

5                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6

7                        By _____/s/ Dennis J. Smith_____
8                                         GREGORY A. LONG
                                          GARY A. CLARK
9                                         DENNIS J. SMITH

10                              Attorneys for Defendants and Counterclaimants
11                                ENDICIA, INC. and PSI SYSTEMS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

1   GREGORY A. LONG, Cal. Bar No. 57642
    E-mail: glong@sheppardmullin.com
2   GARY A. CLARK, Cal. Bar No. 65455
    E-mail: gclark@sheppardmullin.com
3   DENNIS J. SMITH, Cal. Bar No. 233842
    E-mail: djsmith@sheppardmullin.com
4   DANIEL C. MUNIZ, Cal. Bar No. 240477
    E-mail: dmuniz@sheppardmullin.com
5   BRIDGETTE A. AGNESS, Cal. Bar No. 221900
    E-mail: bagness@sheppardmullin.com
6   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
7      Including Professional Corporations
    333 South Hope Street, 48th Floor
8   Los Angeles, California 90071-1448
    Telephone: (213) 620-1780
9   Facsimile: (213) 620-1398

10  Attorneys for Defendants and Counterclaimants
    ENDICIA, INC. and PSI SYSTEMS, INC.

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                   WESTERN DIVISION

14

15  STAMPS.COM, INC.,                   Case No. CV 06-7499 ODW (CTx)

16              Plaintiff,              Hearing
                                        Date: February 25, 2008
16                                      Time: 1:30 p.m.
17       v.                             Ctrm: 11, Hon. Otis D. Wright II

18  ENDICIA, INC., and PSI SYSTEMS,     **DEFENDANTS ENDICIA, INC.
    INC.,                               AND PSI SYSTEMS, INC.'S
                                        MEMORANDUM OF POINTS AND
19              Defendants.             AUTHORITIES IN SUPPORT OF
                                        RULE 11 MOTION FOR
20                                      SANCTIONS, INCLUDING
                                        STRIKING OF PORTIONS OF
21                                      PLAINTIFF STAMPS.COM INC.'S
                                        COMPLAINT AND MONETARY
22                                      SANCTIONS AGAINST
                                        PLAINTIFF AND ITS COUNSEL**

23

24                                      [(1) Notice of Motion and Motion for
                                        Rule 11 Sanctions; (2) Smith
25                                      Declaration with Exhibits;
                                        (3) Montgomery Declaration; and
26                                      (4) [Proposed] Order Submitted
                                        Concurrently Herewith]
27  _____
    AND RELATED COUNTERCLAIMS.
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................. 2

III. LEGAL STANDARD ....................................................................................... 5

IV.    PLAINTIFF'S    INFRINGEMENT    CLAIMS    AGAINST    THE
PORTABLE STORAGE PATENTS ARE FRIVOLOUS................................. 6

    A.    No Non-Frivolous Constructions of the Identified Claims of the
Portable Storage Patents Could Possibly Cover The Accused
Products ................................................................................................... 6

        1.    Claim 68................................................................................... 8

        2.    Specification ........................................................................... 9

        3.    Prosecution History .............................................................. 10

        1.    Claim 9................................................................................... 14

        2.    Specification ......................................................................... 16

        3.    Prosecution History .............................................................. 17

    B.    The Plaintiff's Disclosures Show That It Failed To Conduct A
Reasonable Infringement Inquiry Prior To Filing The Complaint ....... 20

V. CONCLUSION.................................................................................................. 23

-i-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

<u>Altiris, Inc. v. Symantec Corp.,</u>
  318 F.3d 1363 (Fed. Cir. 2003) ............................................................... 15

4

<u>Antonious  v. Spalding & Evenflo Cos.,</u>
  275 F.3d 1066 (Fed. Cir. 2002) ...........................................................7, 20

5

6

<u>Christian v. Mattel, Inc.,</u>
  286 F.3d 1118 (9th Cir. 2002) .................................................................. 6

7

<u>Constant v. Advanced Micro-Devices, Inc.,</u>
  848 F.2d 1560 (Fed. Cir. 1988) ................................................................ 9

8

9

<u>Crawford v. Heysinger,</u>
  123 U.S.  589 (1887) .............................................................................. 10

10

<u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,</u>
  234 F.3d 558 (Fed. Cir. 2000), rev'd & remanded, 535 U.S. 722 (2002), <i>on
  remand,</i> 344 F.3d 1359 (Fed. Cir. 2003), <i>cert. denied,</i> 541 U.S. 988 (2004)....13

11

12

<u>Fonar Corp. v. General Electric Co.,</u>
  107 F.3d 1543 (Fed. Cir. 1997) .........................................................15, 16

13

14

<u>Goodyear Dental Vulcanite Co. v. Davis,</u>
  102 U.S. 222 (1880) .............................................................................. 11

15

<u>Ivanova v. Columbia Pictures Ind.,</u>
  217 F.R.D. 501, Fed. R. Civ. P. 11 (c)(2) .................................................. 6

16

17

<u>Judin v. United States,</u>
  110 F.3d 780 (Fed. Cir. 1997) ................................................................ 21

18

<u>Micro Chem., Inc. v. Great Plains Chem. Co.,</u>
  194 F.3d 1250, 52 U.S.P.Q. 2d 1258 (Fed. Cir. 1999)................................15

19

20

<u>Omega Engineering, Inc. v. Raytek Corp.,</u>
  334 F.3d 1314 (Fed. Cir. 2003) .............................................................. 11

21

<u>Q-Pharma, Inc. v. Andrew Jergens Comp.,</u>
  360 F.3d 1295 (Fed. Cir. 2004) ...........................................6, 7, 8, 14, 15, 18, 20,
  ......................................................................................................... 23

22

23

<u>S. Bravo Sys., Inc. v. Containment Techs. Corp.,</u>
  96 F.3d 1372 (Fed. Cir. 1996) ................................................................ 21

24

25

<u>Schriber-Schroth Co. v. Cleveland Trust Co.,</u>
  311 U.S. 211 (1940) .............................................................................. 10

26

<u>Secur. Farms v. Int'l Brotherhood of Teamsters, Chauffers, Warehousemen &
  Helpers,</u>
  124 F.3d 999 (9th Cir. 1997) .................................................................... 6

27

28

-ii-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Southwall Techs., Inc. v. Cardinal IG Co.,
    54 F.3d 1570 (Fed. Cir. 1995) ............................................................................ 13

U.S. v. Telectronics, Inc.,
    857 F.2d 778, 784 (Fed. Cir. 1988) .................................................................. 10

Texas Instruments Inc. v. United States Int'l Trade Comm'n,
    988 F.2d 1165 (Fed. Cir. 1993) ........................................................................ 13

View Engineering v. Robotic Vision Systems,
    208 F.3d 981 (Fed. Cir. 2000) ............................................................. 10, 20, 21

Yagman v. Republic Ins.,
    987 F.2d 622 (9th Cir. 1993) .............................................................................. 6

Statutes

35 U.S.C. § 112 ............................................................................................................ 1

35 U.S.C. § 112, ¶ 2 .................................................................................................. 16

35 U.S.C. § 112, ¶ 6 ............................................................................................ 15, 17

Fed. R. Civ. P. 11 ................................................................................... 1, 5, 6, 7, 23

-iii-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

1

## I.    <u>INTRODUCTION</u>

2    The question presented by this motion is whether the Plaintiff's

3 attorneys had a non-frivolous basis for asserting that claim terms requiring a postage

4 credit storage device that is portable cover storage devices that are non-portable.

5 The answer is that they did not.  The claims of the Portable Storage Patents[1] on

6 which the Plaintiff's attorneys admit they based their pre-filing analysis require

7 portability, either (i) in express words ("postage memory device temporarily

8 associated [with the computer]")[2] or (ii) by means-plus-function clauses for which

9 the only corresponding structures in the specification under 35 U.S.C. § 112, sixth

10 paragraph, are portable storage devices (Touch Memory Utility button; smart disc;

11 smart card; PCMCIA card).

12    Furthermore, during the prosecution of two of the Portable Storage

13 Patents, the scope of the identified claims was narrowed to cover only portable

14 postage credit storage devices in order to distinguish the inventions over the prior art

15 for purposes of establishing patentability.  The Plaintiff cannot now recapture the

16 non-portable storage devices disclaimed during prosecution through claim

17 interpretation or the doctrine of equivalents.  The Defendants' accused Internet-

18 based systems, methods, and products use only non-portable storage devices.

19    The Plaintiff's attorneys thus could not have had a non-frivolous basis

20 for asserting these claims.

21    Pursuant to FED. R. CIV. P. 11(b)(1)-(3) and (c), Endicia and PSI hereby

22 move for an order striking from the Complaint all references to the Portable Storage

23 Patents and for monetary sanctions equal to Endicia and PSI's costs and attorneys'

24 fees incurred in preparing and arguing this Motion and otherwise addressing the

25 above-listed patents.

26

27

28

[1] The Portable Storage Patents are U.S. Patent Nos. 5,510,992 ("the '992 patent"), 5,682,318 ("the '318 patent"), and 5,819,240 ("the '240 patent").

[2] All emphasis has been added unless otherwise stated.

-1-

## II.    FACTUAL BACKGROUND

The inventions claimed in the Portable Storage Patents are from the era when postage credit storage devices ("PCSD") were portable and used to physically shuttle purchased postage credit from a United States Post Office to the computer with which the purchaser wished to print postage.  (Declaration of Dennis Smith, "Smith Decl.," ¶¶ 13, 14, 16 & Exhs. 9. 10. 12.)

As the Plaintiff knows, the Defendants' "Endicia Standard," "Endicia Premium," "Endicia Professional," "Endicia for Mac," "Platinum Shipper," and "PictureItPostage" products and services ("Accused Products") are Internet-based and run on computer servers that do not make use of Touch Memory Utility ("TMU") buttons, smart discs, smart cards, or any other type of portable PCSD.  All of the Defendants' systems, methods, and products store postage credit in the Defendants' computer servers.  (Declaration of Scott Montgomery, "Montgomery Decl.," ¶ 5.)  Those systems, methods, and products all use non-portable postage credit storage.  (*Id.*)  The Defendants' systems have had three generations of physical implementations of the database server: i) Dell Poweredge 1550 Server, ii) Dell 2650 Server, and iii) a "clustered" pair of Dell 6600 servers connected to an EMC CX300 Storage Array.  (*Id.*)  In the current physical implementation, the two Dell servers are identical in every respect – used merely for redundancy purposes in case one should fail.  (*Id.*)  The EMC storage array functions as the data storage for the two clusters.  (*Id.*)

Therefore, the Plaintiff's allegations of infringement of the Portable Storage Patents are objectively baseless because – based on claim language, identified corresponding structure of means clauses, prosecution histories, and other patents – there is not, and never has been, a non-frivolous basis for the Plaintiff to construe the identified claims of the Portable Storage Patents to read on the non-portable postage credit storage used by the Accused Products.

The Plaintiff filed the Complaint on November 22, 2006, alleging that

-2-

1    the Defendants Endicia, Inc. and PSI Systems, Inc. infringed the eleven Asserted

2    Patents.  (Smith Decl., ¶¶ 13-23 & Exhs. 9-19.)  On June 4, 2007, more than six

3    months after the Plaintiff filed the Complaint, the Defendants received PLAINTIFF'S

4    RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1-14)

5    ("Responses").  (Smith Decl., ¶ 4 & Exh. 1.)    Interrogatory No. 7 sought a

6    description of the Plaintiff's pre-filing infringement analysis, and Interrogatory

7    No. 10 sought a claim construction chart providing the grounds for the Plaintiff's

8    infringement positions on an element-by-element basis.  (Smith Decl., ¶ 4 & Exh. 1

9    at 11, 18-19.)

10           In response to Interrogatory No. 7 the Plaintiff provided a general

11   assertion that infringement had been evaluated only for a single claim of each of the

12   Asserted Patents ("Identified Claims"),[3] and a cursory description of the Plaintiff's

13   counsel's alleged investigation of the Accused Products.  (*Id.* at 11-13.)    The

14   Plaintiff's response to Interrogatory No. 7 failed to provide any information about

15   any pre-filing interpretations of the Identified Claims or evidence that the Plaintiffs

16   had conducted a pre-filing limitation-by-limitation comparison of those claims to the

17   features of the Accused Products.  (*Id.* at 15.)  In response to Interrogatory No. 10,

18   the Plaintiff essentially repeated the list of Identified Claims that it alleges are

19   literally infringed by the Accused Products.  (*Id.* at 19-20.)    Nowhere in the

20   Responses does the Plaintiff state that it construed the Identified Claims prior to

21   filing the Complaint.

22           On June 18, 2007, counsel for the Defendants requested a Rule 37-1

23   conference to discuss, among other things, the Plaintiff's inadequate responses to

24   Interrogatory Nos. 7 and 10.  (*Id.*, ¶ 5 & Exh. 2.)  During the conference on June 28,

25

26   [3]  Identified Claims: claim 9 from the '992 patent, claim 34 from the '597 patent, claim 45 from the '991 patent, claim 68 from the '240 patent, claim 26 from the '980 patent, claim 1 from the '568 patent, claim 31 from the '777 patent, claim 1

27   from the '214 patent, claim 5 from the '451 patent, and claim 1 from the '808 patent. (Smith Decl., ¶ 4 & Exh. 1 at 12-13, 19-20)

28

-3-

DEFENDANTS' MEMORANDUM IN
                                                                              SUPPORT OF RULE 11 MOTION

1  2007, the Plaintiff's attorney, Philip J. Graves, agreed to supplement the responses

2  to Interrogatory Nos. 7 and 10.  (*Id*., ¶ 6 & Exh. 3.)

3        On July 9, 2007, the Defendants' counsel received PLAINTIFF'S

4  SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

5  (NOS. 1-14) ("Supplemental Responses").  (*Id.*,,¶ 7 & Exh. 4.)  In response to

6  Interrogatory No. 7, the Plaintiff described a November 2006 meeting during which

7  there allegedly was a review of documents and other information concerning the

8  operation and functionality of one or more of the Defendants' products or services.

9  (*Id*. at 16.)  On July 16, 2007, the Defendants received PLAINTIFF'S SECOND

10  SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

11  (NOS. 1-14) ("Second Supplemental Responses").  (*Id,* ¶ 8 & Exh. 5.)  The Second

12  Supplemental Responses addressed only Interrogatory No. 10, stating that at least

13  the Identified Claims in Exhibit A of the Second Supplemental Responses

14  ("Exhibit A") "are literally infringed by the Accused Products."[4]  (*Id*. at 6.)

15  Exhibit A is a two-column table in which the left column, entitled "Claim," lists in

16  sequence each of the elements of the Identified Claims that the Plaintiff alleges it

17  analyzed for infringement prior to filing the Complaint.  (Smith Decl., ¶ 8 & Exh. 5,

18  Exhibit A.)  The right column has only cryptic headings: for the '777 patent, the

19  right column is untitled; for the '992 and '318 patents, the right column is titled

20  "Infringement"; and for the remaining Asserted Patents, the right column is titled

21  "Claim Construction and Infringement."  (*Id.*)  The contents of the right column are

22  a mixture of allegations concerning aspects of the Accused Products, excerpts from

23  the pertinent patent's specification and/or conclusory statements about infringement.

24  (*Id.*)

---

[4] Despite the fact that Interrogatory No. 10 directs Plaintiff to indicate in the claim chart whether it contends that there is infringement under the Doctrine of Equivalents and the bases for any such contention, the Second Supplemental Responses only alleges literal infringement of the Identified Claims.  (*Id*. at 6, Exhibit A.)  Accordingly, this motion will only address literal infringement.

1    On August 29, 2007, the Defendants' counsel sent a letter to the

2 Plaintiff's attorney, Mr. Graves, seeking a pre-filing conference of counsel to

3 discuss the Defendants' contemplated motion for sanctions in light of the inadequate

4 responses contained in the Second Supplemental Responses. (Smith Decl., ¶ 9 &

5 Exh. 6.) At the pre-filing conference on September 14, 2007, Mr. Graves presented

6 the Plaintiff's position that each of the Asserted Patents covered the Accused

7 Products. (*Id.*) When pressed for a more specific explanation about how the

8 Portable Storage Patents could be infringed, Mr. Graves stated that it is the

9 Plaintiff's position that the memory in the Defendants' computer servers is postage

10 storage covered by the Portable Storage Patents.[5] (*Id.*)

11    The parties were unable to resolve their differences. Accordingly, the

12 Defendants indicated that they would prepare and serve a copy of this motion at

13 least 14 days prior to filing, pursuant to the "safe harbor" provision of

14 RULE 11(c)(1)(a). (*Id.*, ¶ 12.) In response Mr. Graves took the position that the

15 Plaintiff would oppose the Defendants' motion as premature because discovery was

16 not yet complete. (*Id.*) The Court does not need discovery to conclude that the

17 Plaintiff has failed to provide the Defendants with an adequate description of its pre-

18 filing infringement analysis concerning the Asserted Patents. The Court also does

19 need discovery to conclude that there is no non-frivolous basis for construing the

20 Identified Claims of the Portable Storage Patents to encompass non-portable

21 PCSDs.

22    ### III.   <u>LEGAL STANDARD</u>

23    Rule 11 requires that papers filed with the court: (1) not be presented

24 for any improper purpose, (2) be warranted by existing law or by a non-frivolous

25

_____

26 [5] Mr. Graves also directed Defendants' counsel to an additional excerpt from the
'240 patent (this excerpt was not identified in the Second Supplemental Responses)

27 that he alleged provided support for Plaintiff's position. See column 7 lines 24-30,
of the '240 patent, discussed *infra*.

28

DEFENDANTS' MEMORANDUM IN
                                                        SUPPORT OF RULE 11 MOTION

1  argument for extension, modification, or reversal of existing law or the

2  establishment of new law; and (3) have evidentiary support or, if specifically so

3  identified, be likely to have evidentiary support after a reasonable opportunity for

4  further investigation or discovery. FED. R. CIV. P. 11(b).  The Ninth Circuit defines

5  a 'frivolous' complaint for purposes of Rule 11 according to a two-pronged inquiry

6  that asks whether the complaint is "'[(1)] legally or factually 'baseless' from an

7  objective perspective . . . [and (2) made without] a reasonable and competent

8  inquiry.'"  *Q-Pharma, Inc. v. Andrew Jergens Comp.*, 360 F.3d 1295, 1299 (Fed.

9  Cir. 2004) (*citing Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)).

10  Sanctions may take whatever form necessary to deter future violations

11  and may be imposed against the errant attorney, law firm, and/or the party itself.

12  FED. R. CIV. P. 11(c).  Striking the offending portions of a complaint is an

13  appropriate request under Rule 11, "as Rule 11 provides that a court may impose

14  'directives of a nonmonetary nature' as a sanction for its violation."  *Ivanova v.*

15  *Columbia Pictures Ind.*, 217 F.R.D. 501, 512 (C.D. Cal. 2003); FED. R. CIV. P.

16  11(c)(2).

17  "A violation of the rule does not require subjective bad faith."  *Yagman*

18  *v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993).  A party and its counsel "may

19  not avoid 'the sting of Rule 11 sanctions by operating under the guise of a pure heart

20  and empty head.'"  *Secur. Farms v. Int'l Brotherhood of Teamsters, Chauffers,*

21  *Warehousemen & Helpers*, 124 F.3d 999, 1016 (9th Cir. 1997).

22

23     **IV.    PLAINTIFF'S INFRINGEMENT CLAIMS AGAINST THE**

24          **PORTABLE STORAGE PATENTS ARE FRIVOLOUS**

25  **A.    No Non-Frivolous Constructions of the Identified Claims of the Portable**

26       **Storage Patents Could Possibly Cover The Accused Products**

27  Under Rule 11, a plaintiff has a duty to conduct a "reasonable inquiry

28  into the law and facts before filing a pleading in a court and to certify that the claims

-6-

1  contained therein are not frivolous, legally unreasonable, without factual foundation,

2  or asserted for an improper purpose." *Q-Pharma*, 360 at 1300.  In the patent

3  infringement context, an attorney must "interpret the asserted patent claims and

4  compare the accused device with those claims before filing a claim alleging

5  infringement." *Id.* at 1300-01.  "Because claim construction is a matter of law, an

6  attorney's proposed claim construction is subject to the Rule 11(b)(2) requirement

7  that all legal arguments be nonfrivolous." *Antonious*, 275 F.3d at 1072.

8      Sanctions for violating Rule 11(b)(2) are proper if "a reasonable

9  attorney would have concluded that the claim construction proposed by the

10  [plaintiff's counsel] was frivolous." *Id.* at 1074.  A reasonable inquiry in the context

11  of claim construction requires that counsel's claim construction (i) adhere to the

12  standard canons of claim construction and (ii) be reasonably supported by the

13  intrinsic record. *Q-Pharma* 360 F.3d at 1301.

14      Each and every invention covered by the Identified Claims of the

15  Portable Storage Patents requires the use of a postage credit storage device that is

16  portable.  The Plaintiff knows that none of the Accused Products makes use of a

17  PCSD that is portable.  During the Rule 7-3 conference, the Plaintiff clearly stated

18  its position: the Portable Storage Patents read on the memory in the Defendants'

19  computer servers.  (Smith Decl., ¶ 12.)  Even if the Plaintiff had provided an

20  adequate explanation of its construction of the claims of the Asserted Patents –

21  which it has not – any interpretation reading on the Accused Products would have

22  been factually and legally meritless for the Identified Claims of the Portable Storage

23  Patents because those claims cannot be construed to cover the non-portable PCSDs

24  used in the Defendants' system.  Therefore, the Accused Products cannot infringe

25  the Portable Storage patents as a matter of law, and the first prong for violation of

26  Rule 11 is therefore satisfied. *Q-Pharma*, 360 F.3d at 1299.

27

28

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

**PORTABLE STORAGE PATENTS**

**Claim 68 of U.S. Patent No. 5,819,240**

During the Rule 7-3 conference, the Plaintiff stated its unequivocal position that the Portable Storage Patents read on the memory in the Defendants' servers. (Smith Decl., ¶ 12.) As shown below, claim 68 of the '240 patent requires a portable PCSD. The only PCSDs specifically disclosed anywhere in the '240 patent are portable: a touch memory utility ("TMU") button, a smart disk, a smart card and a PCMCIA card. (Smith Decl., ¶ 16 & Exh. 12 at Figs. 1B, 2, 3, 4A-4B, 5, 7-8, 10A-10C, 13-14B.)

    1.    **Claim 68**

According to Exhibit A, claim 68 was the only claim of the '240 patent allegedly analyzed for infringement before filing the Complaint. (Smith Decl., ¶ 8 & Exh. 5.)

Claim 68 states:

A method of creating a selected postage indicia, said method comprising the steps of:

displaying a plurality of said postage indicia on a general purpose processor-based system screen, said general purpose processor-based system having a postage memory device temporarily associated therewith;

selecting under control of a user a particular one of said displayed indicia for transmittal to a printer; and

printing said selected particular one of said postage indicia, wherein said printing step is performed substantially contemporaneously with said selecting step.

(*Id*., ¶ 16 & Exh. 12 at 33:16-34:9.)

Claim 68 thus requires that the PCSD be temporarily associated with the general purpose processor-based system. Combined with fact that the

-8-

1  '240 patent's specification and drawings uniformly disclose portable PCSDs (in fact

2  a large section of the '240 patent's specification is titled "Portable Memory

3  Validation"), this reference to the temporary association or coupling of the PCSD to

4  the processor-based system leads to the conclusion that claim 68 requires a PCSD

5  that is portable.

6      **2.    Specification**

7         It is fundamental that claims should be construed in connection with the

8  specification and the drawings. *Constant v. Advanced Micro-Devices, Inc.*, 848

9  F.2d 1560, 1571 (Fed. Cir. 1988). Accordingly, the "postage memory device"

10 limitation of claim 68, must be interpreted in light of the disclosures in the

11 specification and drawings. Every disclosure of the PCSD provided in the

12 '240 patent's specification teaches a device that is portable. In the ABSTRACT, the

13 '240 patent explains that "[a] user *takes* a postal storage device to the Post Office in

14 order to obtain a replenishment of the amount of postage stored within the postage

15 storage device." (Smith Decl., ¶ 16 & Exh. 12 at Abstract.)

16        In the BACKGROUND OF THE INVENTION, SUMMARY OF THE INVENTION,

17 and DETAILED DESCRIPTION OF THE INVENTION sections of the '240 patent's

18 specification the PCSD disclosed is, without exception, either a specific example of

19 a portable device or is described as being portable. (*Id.* at 2:64-3:10; 3:48-54; 4:8-

20 12; 4:51-56; 6: 32-35; 7:18-21; 8:5-10; 8:19-20; 8:27-28.) The only PCSDs

21 disclosed in Figures 1B, 2, 3, 4A-4B, 5, 7-8, 10A-10C, 13-14B of the '240 patent's

22 specification are a "TMU button," "button," or "portable" storage device.

23        The language that the Plaintiff identified during the Rule 7-3

24 conference must be taken in context with the rest of the specification and drawings

25 as well as the language in claim 68, which expressly requires that the "postage

26 memory device" be "temporarily associated" with the general purpose processor

27 based system. The '240 patent's specification and drawings consistently state that

28 the invention requires a portable PCSD such as a TMU button, a smart disk, a smart

1    card or a PCMCIA card.  Thus, the interpretation of "postage memory device" that

2    the Plaintiff now seeks to advance is groundless as a matter of law and fact, which

3    satisfies the second prong of the Ninth Circuit's two-pronged frivolous pleadings

4    analysis for Rule 11 violations.

5           Because the Defendants' products and services all use a non-portable

6    PCSD, infringement could never be proven for failure to meet the all elements rule.

7    *Telectronics*, 857 F.2d at 784 (Fed. Cir. 1988).   Accordingly, under *View*

8    *Engineering* the Plaintiff failed to meet its pre-filing obligations under Rule 11

9    because it could not have concluded that there was a reasonable basis for a finding

10   of infringement of claim 45 of the '991 patent prior to filing the Complaint.  208

11   F.3d at 986.[6]   Based on the prosecution history, the Plaintiff disclaimed any

12   interpretation of claim 69 that would read on non-portable PCSDs.

13          **3.     Prosecution History**

14          The doctrine of prosecution disclaimer precludes patentees from

15   recapturing through claim interpretation meanings disclaimed during prosecution.

16   *See Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220-21 (1940) ("It

17   is a rule of patent construction consistently observed that a claim in a patent as

18   allowed must be read and interpreted with reference to claims that have been

19   cancelled or rejected, and the claims allowed cannot by construction be read to

20   cover what was thus eliminated from the patent."); *Crawford v. Heysinger*, 123 U.S.

21   589, 602-04 (1887); *Goodyear Dental Vulcanite Co. v. Davis*, 102 U.S. 222, 227

22   (1880); *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314,1325-26 (Fed. Cir.

23   2003).  During the prosecution of claim 68 of the '240 patent, the Applicant clearly

---

24   [6] Plaintiff subsequently identified the following excerpt: "The postage storage
25   device may be any memory device having some residual data capability, where that
     memory device can provide sufficient security measures to efficiently limit access to
26   the memory of the device to authorized users.  For example, since algorithms can be
     used to control access to the memory device, a standard "diskette" can be used if
27   desired."  (Smith Decl., ¶ 16 & Exh. 12 at 7:24-30.)  Plaintiff's litigation-induced
     identification of this single excerpt ignores its specific reference to a portable PCSD.

28

-10-

DEFENDANTS' MEMORANDUM IN
                                                                                  SUPPORT OF RULE 11 MOTION

1  and unmistakably disclaimed non-portable PCSDs.

2  Claim 68 of the '240 patent was originally claim 69.  (Smith Decl., ¶ 24

3  & Exh. 20 at 476.)   In a January 3, 1997 Office Action, the Examiner rejected

4  claim 68 (application claim 69) as anticipated under § 102(b) in light of Storace

5  (U.S. Patent No. 4,831,554) or Gilham (U.S. Patent No. 5,200,903); and under

6  § 102(e) under Heinrich et al (U.S. Patent No. 5,471,925) or Freytag (U.S. Patent

7  No. 5,490,077).  (*Id.* at 479, 481.)   The Examiner stated that Storace, Gilham,

8  Heinrich or Freytag disclose "a postage metering system that allows a particular user

9  to select one of many different postage indicia that is to be printed so as to

10  personalize the mail to the user."  (*Id.*)

11  In response to the January 3, 1997 Office Action, Applicant amended

12  claim 68 (application claim 69) as follows:

13  A method of creating a selected postage indicia, said method
14  comprising the steps of:

15  displaying a plurality of said postage indicia on a general
16  purpose processor-based <u>system</u> screen<u>, said general purpose
17  processor-based system having a postage memory device temporarily
18  associated therewith</u>;

19  selecting under control of a user a particular one of said
20  displayed indicia for transmittal to a printer; and

21  printing said selected particular one of said postage indicia<u>,
22  wherein said printing step is performed substantially
23  contemporaneously with said selecting step</u>.

24  (*Id.* at 490.)

25  In his remarks, the Applicant's counsel explained that claim 68

26  (application claim 69) was amended to add the use of a general purpose processor-

27  based system in the generation and printing of postage indicia asserting that the

28  prior art cited by the Examiner failed to teach this feature.  (*Id.* at 494.)   The

-11-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

1  Applicant then took the position that "Heinrich does not teach a general purpose
2  processor-based system . . . . [or] a memory device separate from the disclosed
3  postage meter . . . . much less a removably/temporarily coupled memory device."
4  (*Id.* at 495.)

5        The Applicant observed that Heinrich also teaches that "in the postage
6  meter, through its keyboard, the function for changing alphanumeric text portions
7  inside the advertising logo can be made possible," and therefore "Applicant
8  respectfully asserts that Heinrich does not anticipate the general purpose processor-
9  based system, having a removable memory device coupled thereto . . . as recited in
10  independent claims . . . 69." (*Id.*)

11        Applicant then asserted that:
12        "[i]f security is an issue to be avoided in requesting new advertising
13        logos from the data center, then so would it be an issue to be avoided
14        in the use of a general purpose processor-based system capable of
15        open access by any of a number of users and/or other processes.
16        Therefore, applicant respectfully asserts that the use of a general
17        purpose processor-based system, having a portable memory device
18        coupled thereto, to create, generate, or select a postage indicia is not
19        obvious in light of Heinrich."
20  (*Id.*)

21        In the subsequent June 6, 1997 Office Action, the Examiner abandoned
22  the prior anticipation rejections. (*Id.* at 505, 506.) Thus, the prosecution history for
23  claim 68 of the '240 patent shows that the Applicant clearly and unmistakably
24  disclaimed systems using "non-portable memory devices" in order to obtain
25  patentability over the prior art. The Plaintiff cannot now use claim interpretation to
26  recapture the non-portable memory devices disclaimed during prosecution. The
27  Applicant's clear and unmistakable statements also act to prevent the Plaintiff from
28  capturing non-portable PCSDs based on the doctrine of equivalents.

-12-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

1    "Arguments made voluntarily during prosecution may give rise to
2  prosecution history estoppel if they evidence a surrender of subject matter." *Festo*
3  *Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, (Fed. Cir. 2000) (en
4  banc), rev'd & remanded, 535 U.S. 722 (2002), *on remand*, 344 F.3d 1359 (Fed. Cir.
5  2003), *cert. denied*, 541 U.S. 988 (2004); *Southwall Techs., Inc. v. Cardinal IG Co.*,
6  54 F.3d 1570, 1583 (Fed. Cir. 1995) ("Clear assertions made during prosecution in
7  support of patentability, whether or not actually required to secure allowance of the
8  claim, may … create an estoppel."); *Texas Instruments Inc. v. United States Int'l*
9  *Trade Comm'n*, 988 F.2d 1165, 1174 (Fed. Cir. 1993) (holding that arguments made
10 during prosecution that emphasized one feature of the invention estopped the patent
11 holder from asserting that a device lacking that feature infringed the patent under the
12 doctrine of equivalents).

13   Based on the Applicant's statements made during the prosecution of
14 claim 68 of the '240 patent quoted *supra*, it is clear that the Applicant surrendered
15 non-portable storage devices to obtain allowance of the claim and emphasized that
16 the claimed invention made use of portable storage devices.  Therefore, under *Festo*
17 and progeny, the Plaintiff cannot now use the doctrine of equivalents to recapture
18 the non-portable storage devices used in the Defendants' system.

19   Based on the claim language, the disclosures in the specification and
20 drawings which consistently disclose a portable PCSD such as a TMU button and a
21 diskette, and the prosecution history, any attempt by the Plaintiff to interpret
22 claim 68 of the '240 patent or use the doctrine of equivalents to read on the non-
23 portable memory used in the Defendants' system is factually and legally
24 unsupportable.  Thus, the first prong of the Ninth Circuit's two-pronged frivolous
25 pleadings analysis for Rule 11 violations is satisfied with respect to claim 68 of the
26 '240 patent.  *Q-Pharma*, 360 F.3d at 1299.

27

28

-13-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

1  **Claim 9 of U.S. Patent No. 5,510,992**

2        The Plaintiff now claims that the non-portable memory in the

3  Defendants' servers is a portable PCSD.  (Smith Decl., ¶ 12.)   Every PCSD

4  expressly disclosed in the '992 patent is portable: either a TMU button or a diskette.

5      **1.**    **Claim 9**

6        According to Exhibit A to the Plaintiff's Second Supplemental

7  Responses to the Defendants' First Set of Interrogatories, claim 9 was the only claim

8  of the '992 patent allegedly analyzed in November of 2006 for infringement.  The

9  relevant limitations found in claim 9 are written as means clauses.

10        Claim 9 states:

11  A general purpose processor-based system operable for outputting

12      data pertaining to a postage meter stamp to be printed on a piece of

13      mail, said system comprising:

14        means for verifying that a universal storage means,

15      programmed to contain a predetermined amount of postage that may

16      be printed is coupled to said system, is an authorized storage means,

17      said means for verifying using data retrieved from said storage means;

18        means for retrieving a portion of an amount of postage

19      contained within said verified storage means; and

20        means for outputting data pertaining to said retrieved portion

21      along with data operable for printing said postage meter stamp

22      including an indication of said retrieved postage portion; and

23        means operable prior to said outputting of data for displaying a

24      graphical representation of said postage meter stamp including said

25      retrieved portion of postage.

26  (Smith Decl., ¶ 13 & Exh. 9 at 10:19-36.)

27        Construing a means-plus-function limitation is a two-step process.  35

28  U.S.C. § 112, ¶ 6.  The first step is to identify the function of the limitation, which

-14-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

1   must be explicitly recited in the claim.  *Micro Chem., Inc. v. Great Plains Chem.*

2   *Co.*, 194 F.3d 1250, 1258, 52 USPQ2d 1258, 1263 (Fed. Cir. 1999).  The court next

3   ascertains the corresponding structure in the written description that is necessary to

4   perform that function.    35 U.S.C. § 112, ¶ 6.    "Structure disclosed in the

5   specification is 'corresponding' structure only if the specification or prosecution

6   history clearly links or associates that structure to the function recited in the claim."

7   *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed. Cir. 2003) (internal

8   citations omitted).

9           Here, claim 9 contains a limitation "universal storage means."  (Smith

10  Decl., ¶ 13 & Exh. 9 at 10:22-23.)  The Plaintiff's construction of the universal

11  storage means limitation must adhere to the standard canons of claim construction

12  and be reasonably supported by the intrinsic record.  *Q-Pharma* at 1301.   In

13  Exhibit A, the Plaintiff identifies the following language:  "Also note that while the

14  portable memory has been shown to be a "button" memory, any memory device

15  having some residual data capability will work, providing the security problems are

16  overcome.  Since algorithms can be used to control security a standard 'diskette' can

17  be used if desired."[7]  (*Id.* at 8:65-9:3.)

18          When a patent's specification discloses a specific structure

19  corresponding to a means-plus-function limitation and indicates generally that other

20  structures may be used, the claim is limited to the specific structure and its

21  equivalents.  *Fonar Corp. v. General Electric Co.*, 107 F. 3d 1543, 1551-52 (Fed.

22  Cir. 1997), cert. denied, 522 U.S. 908 (1997) ("The '966 specification discloses use

23  of a generic gradient wave form.  Although [the specification] states that other wave

24  forms may be used, it fails to specifically identify those wave forms.  Thus, under

25

---

26  [7] On its face, the quoted language is clearly confined to a discussion of alternative
    examples of portable memory: "Also note that while the <u>portable</u> memory has been
27  shown to be . . .."  Consistent with this is the fact that the alternative embodiment
    specifically identified in this quote is a portable memory device: a diskette.

28

-15-

1   section 112, ¶ 6, claim 12 is limited to use of a generic gradient wave form and its

2   equivalents"); *see also* 35 U.S.C. § 112, ¶ 2.  Under *Fonar*, the 'universal storage

3   means' limitation of claim 9 is limited to the identified TMU button and diskette

4   structures and equivalents thereof.[8]

5       **2.    Specification**

6       The written description teaches only the use of portable PCSDs and that

7   every PCSD specifically disclosed in the '992 patent is portable (i.e., TMU buttons

8   and a diskette).  In the ABSTRACT, the '992 patent explains that "[a] user takes a

9   touch memory utility ("TMU") button to the Post Office in order to obtain a

10  replenishment of the amount of postage stored within the TMU button.  A desired

11  amount of postage is entered into the TMU button by a postal employee through a

12  processor-based system . . user takes a postal storage device to the Post Office in

13  order to obtain a replenishment of the amount of postage stored within the postage

14  storage device."  (Smith Decl., ¶ 13 & Exh. 9 at Abstract.)

15      In every instance where the PCSD is specifically identified in the

16  SUMMARY OF THE INVENTION section '992 patent the PCSD is a portable TMU

17  button:

18          utilized for transferring the obtained amount of postage from the U.S.

19          Post Office to the processor based system.  Typically, a user will

20          physically take the TMU button to . . . a U.S. Post Office location . . . .

21          A postal worker will interface the TMU button with the system

22          residing at the Post Office in order to replenish the amount of postage

23          programmed within the button . . . .

24          The customer will then physically carry the button back to the

25

---

26  [8]  As discussed below, during the prosecution of the '992 patent, the Applicant
    disclaimed all but portable PCSDs, and Plaintiff cannot now reclaim that which was
27  disclaimed through equivalents either under literal infringement of a means clause
    or the doctrine of equivalents.

28

-16-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

1     processor-based system and, couple the button to a corresponding

2     receiving apparatus coupled to the processor-based system . . .

3  (*Id*. at SUMMARY OF THE INVENTION at 2:54-3:5; *see also* 3:16-20; 3:30-34.)

4          The only PCSDs disclosed in Figures 1, 2A, 2B, and 5 are TMU

5  buttons.   The prosecution history of claim 9 of the '992 patent reveals that the

6  Plaintiff disclaimed interpretations of the storage means limitation that would read

7  on non-portable storage according to § 112, ¶ 6 and the Plaintiff is estopped from

8  recapturing non-portable storage devices through application of the doctrine of

9  equivalents.

10     **3.    Prosecution History**

11          In a May 11, 1995 Advisory Action, the Examiner rejected claim 9 of

12  the '992 patent based on § 103 in light of several prior art references.  (Smith Decl.,

13  ¶ 25 & Exh. 21 at 511, 513.)  Following this Office Action, the Examiner and the

14  Applicant participated in a telephonic interview during which the Examiner

15  concluded that the Applicant's proposed amendment to claim 9, adding a

16  handshaking between the TMU and the PC processor to verify the authorization,

17  would render claim 9 allowable over the prior art.  (*Id.* at 517.)

18          In a subsequent August 25, 1995 Amendment, the Applicant explained

19  that claim 9 was amended in response to the Examiner's rejection.  (*Id.* at 521, 524,

20  525.)   The Applicant argued that because the memory is capable of providing

21  postage on any general purpose computer, there must be a high degree of security

22  and flexibility "between the removable memory and the general purpose processor.

23  This also requires a cooperative effort between the PC and the portable memory

24  which translates into, for example, a handshaking routine."  (*Id.* at 525.)

25          In the previous May 11th Advisory Action, the Examiner had taken the

26  position that a verification process was disclosed in the prior art so that changing the

27  location of the verification process would be an obvious modification.  (*Id.* at 511,

28  512.)  The Applicant responded that the location and manner of authorization does

-17-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

1  matter in terms of providing security because "for PC's which are used for many
2  purposes and with many different applications, maintaining security for portable
3  memories is a difficult task." (*Id.* at 526.) The Applicant then provided specific
4  examples of how various claims had been amended so as to maintain security—
5  including claim 9, which had been amended to "specifically indicate the system
6  displays a graphic representation of the postage meter stamp including the value
7  obtained from the portable memory prior to printing the postage." (*Id.* at 527.) The
8  claim was then allowed. (*Id.* at 528.)

9       Thus, while prosecuting claim 11 of the '992 patent, the Applicant
10 clearly and unmistakably disclaimed non-portable storage devices in order to obtain
11 patentability over the prior art. The Applicant's clear and unmistakable statements
12 during prosecution of the '992 patent surrendered subject matter to obtain
13 patentability and emphasized the portable storage feature of the invention thereby
14 creating a record that fairly notified the public that the Applicant had surrendered
15 the right to claim non-portable PCSDs. The Plaintiff cannot now use claim
16 interpretation or the doctrine of equivalents to recapture the non-portable memory
17 devices disclaimed during prosecution.

18      Any attempt by the Plaintiff to construe the "universal storage means"
19 limitation of claim 9 of the '992 patent or to use the doctrine of equivalents to read
20 on the non-portable storage used in the Defendants' systems is factually and legally
21 unsupportable in light of the claim language, specification and drawings which
22 consistently disclose a portable PCSD such as a TMU button, and the prosecution
23 history. Thus, the first prong of the Ninth Circuit's two-pronged Rule 11 frivolous
24 pleadings analysis is satisfied with respect to claim 9 of the '992 patent. *Q-Pharma*,
25 360 F.3d at 1299.

26

27 **Claim 11 of U.S. Patent No. 5,682,318**

28      Except for a handful of typographical and grammatical changes, the

-18-

written description of the '318 patent is essentially identical to that of the '992 patent. Accordingly, as shown above in connection with the '992 patent, the only two postal credit storage devices disclosed in the '318 patent are both portable: a touch memory utility ("TMU") button and a diskette.

Again, according to Exhibit A, claim 11 was the only claim of the '318 patent allegedly analyzed by the Plaintiff prior to filing its Complaint. Similar to claim 9 of the '992 patent, claim 11 of the '318 patent includes a "storage means" means-plus-function limitation.

Claim 11 states:

A general purpose computer system for printing a postage meter stamp indicating a desired amount of postage onto a piece of mail, comprising:

storage means for storing data, said storage means providing direct data access to said general purpose computer;

an application program stored in the storage means, the application program comprising:

postage means for storing data indicating an amount of postage in the storage means; and

means for coupling the general purpose computer system to a remote computer system, wherein the remote computer system can communicate with the application program to increase the amount of postage stored in the storage means.

(Smith Decl., ¶ 14 & Exh. 10 at 10:5-20.)

The corresponding structure of the "storage means" limitation of claim 11 identified in Exhibit A is the same language quoted by the Plaintiff in connection with claim 9 of the '992 patent:

Also note that while the portable memory has been shown to be a "button" memory, any memory device having some residual data

-19-

1    capability will work, providing the security problems are overcome.

2    Since algorithms can be used to control security a standard "diskette"

3    can be used if desired.

4    (Smith Decl., ¶ 8 & Exh. 5.)

5          For the reasons set forth above concerning claim 9 of the '992 patent,

6    the corresponding structures of the "storage means" limitation of claim 11 of the

7    '318 patent are all portable: a TMU button, a diskette and their equivalents.

8          As was the case with the other Portable Storage Patents, any attempt by

9    the Plaintiff to construe the "storage means" limitation of claim 11 of the '318 patent

10   to cover the non-portable storage used by the Defendants' systems is factually and

11   legally unsupportable in light of the claim language and specification and drawings

12   which consistently disclose a portable PCSD such as a TMU button and a diskette.

13   Thus, the first prong of the Ninth Circuit's two-pronged frivolous pleadings analysis

14   for Rule 11 violations is satisfied with respect to claim 11 of the '318 patent.  *Q-*

15   *Pharma*, 360 F.3d at 1299.

16

17   **B.**    <u>**The Plaintiff's Disclosures Show That It Failed To Conduct A**</u>

18         <u>**Reasonable Infringement Inquiry Prior To Filing The Complaint**</u>

19         Taking the second prong of the Ninth Circuit's Rule 11 analysis first,

20   prior to filing a complaint for patent infringement, an attorney must "apply the

21   claims of each and every patent that is being brought into the lawsuit to an accused

22   device and conclude that there is a reasonable basis for a finding of infringement of

23   at least one claim of each patent so asserted."  *View Engineering v. Robotic Vision*

24   *Systems*, 208 F.3d 981, 986 (Fed. Cir. 2000).  Thus, an attorney must "interpret the

25   asserted patent claims and compare the accused device with those claims before

26   filing a claim alleging infringement."  *Q-Pharma*, 360 F.3d 1300-01; *see Antonious*

27   *v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002); *View Eng'g, Inc.*

28   *v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000); *Judin v. United*

-20-

1  *States*, 110 F.3d 780, 784 (Fed. Cir. 1997); *S. Bravo Sys., Inc. v. Containment Techs.*

2  *Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996).

3       As the Federal Circuit explained in *View Engineering*:

4  A patent suit can be an expensive proposition.  Defending against

5  baseless claims of infringement subjects the alleged infringer to undue

6  costs — precisely the scenario Rule 11 contemplates.

7  208 F.3d at 986.

8       The Plaintiff has shown that it failed to construe any claims of the

9  Asserted Patents prior to filing this lawsuit as required by Rule 11 and controlling

10  authority.  Nowhere in the five-page Complaint does the Plaintiff allege that any of

11  the claims of the Asserted Patents were interpreted prior to filing.  More than a year

12  after the Complaint was filed, the Plaintiff's responses to the Defendants discovery

13  requests show that the Plaintiff failed to conduct the required pre-filing claim

14  construction analysis for any of the claims of the Asserted Patents.

15       The Plaintiff provided Interrogatory Responses more than six months

16  after filing the Complaint.  However, in connection with Interrogatory No. 7, which

17  sought a description of the Plaintiff's pre-filing infringement analysis, the

18  Responses included only a generic statement that infringement was evaluated.

19  (Smith Decl., ¶ 4 & Exh. 1 at 15.)  The only specific information provided in

20  response to Interrogatory No. 7 is that some of the Defendants' products and

21  services were investigated along with a list of the Identified Claims that were

22  allegedly evaluated for infringement.  (*Id.* at 15-16.)  In response to Interrogatory

23  No. 10, the Plaintiff did little more than repeat the list of Identified Claims while

24  alleging that they were literally infringed.  (*Id.* at 19-20.)

25       The Defendants received the Supplemental Responses more than a

26  month after receiving the Responses, and then only after the Defendants had sought

27  a Rule 37-1 conference concerning a contemplated motion to compel.  (Smith Decl.,

28  ¶¶ 5-7 & Exhs. 2-4.)  Concerning Interrogatory No. 7, the Supplemental Responses

-21-

DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 11 MOTION

repeated the *de minimus* information provided in the Responses and added only a vague description of a meeting that allegedly took place in November 2006. (*Id*. at 16.) The only specific information provided concerning the November 2006 meeting states that the Plaintiff reviewed several documents – all but one unidentified – and other information concerning the operation and functionality of the Accused Products. (*Id*.) According to the Supplemental Responses the Plaintiff failed to construe any of the claims of the Asserted Patents prior to filing its Complaint.

A week later, the Plaintiff provided the Defendants with its Second Supplemental Responses. (Smith Decl., ¶ 8 & Exh. 5.) The Second Supplemental Responses address only Interrogatory No. 10, stating that at least the Identified Claims listed in Exhibit A "are literally infringed by the Accused Products." (*Id*. at 6.) However, Exhibit A does not provide any description of whether or how the Plaintiff construed the Identified Claims prior to filing the Complaint. (*Id*.) In fact, the right column for three of the patents is either untitled or merely refers to "Infringement." (*Id*.) And in terms of content, the rows of the right column of Exhibit A contain an undifferentiated mixture of allegations concerning aspects of the Accused Products, excerpts from the pertinent patent's specification and/or conclusory statements about infringement. (*Id*.)

During the Rule 7-3 conference concerning the Defendants' contemplated motion for sanctions under Rule 11, which took place nearly 10 months after filing the Complaint, the Plaintiff's counsel, Mr. Graves, identified a new excerpt from the '240 patent that he alleged provided additional support for the Plaintiff's infringement position. (*Id*., ¶ 12.) Mr. Graves failed to provide any specific explanation as to if or how the identified language related to a particular construction of any of the claims of the '240 patent, let alone the Identified Claim, or how the language led him to a pre-filing interpretation that provided a reasonable conclusion that any of the Accused Products infringed.

-22-

1    Thus, beginning with the Complaint and spanning more than a year

2  thereafter the Plaintiff has consistently shown that it failed to construe any claims of

3  the Asserted Patents prior to filing the Complaint as required by Rule 11.   The

4  Plaintiff failed to meet its Rule 11 obligation to come to a non-frivolous

5  interpretation of the claims of the Asserted Patents prior to filing the Complaint.

6  Therefore, the second prong of the Ninth Circuit's two-prong frivolous pleading

7  analysis for Rule 11 violation is satisfied.  *Q-Pharma*, 360 F.3d at 1299.

8

9                          **V.    CONCLUSION**

10    For the foregoing reasons, the Defendants respectfully request that this

11  Court strike from the Complaint all references to U.S. Patent Nos. 5,510,992;

12  5,682,318; and 5,819,240 and impose monetary sanctions against the Plaintiff and

13  its attorneys of record equal to the Defendants' costs and attorneys' fees associated

14  with preparing and arguing this Motion and otherwise addressing the above-listed

15  patents, pursuant to FED. R. CIV. P. 11(b) and (c).

16

17  Dated:  January 2, 2008

18                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

19

20                          By _____
                                         /s/ Dennis J. Smith
21                                    GREGORY A. LONG
                                      GARY A. CLARK
22                                    DENNIS J. SMITH

23                          Attorneys for Defendants and Counterclaimants
                            ENDICIA, INC. and PSI SYSTEMS, INC.
24

25

26

27

28

-23-

DEFENDANTS' MEMORANDUM IN
                                                                SUPPORT OF RULE 11 MOTION