GRAVES LAW OFFICE, P.C.
Philip J. Graves (SBN 153441)
pgraves@graveslawpc.com
Monick T. Paul (SBN 210987)
mpaul@graveslawpc.com
Kirk Hermann (SBN 219620)
khermann@graveslawpc.com
Marjorie A. Witter (SBN 250061)
mwitter@graveslawpc.com
12121 Wilshire Blvd., Suite 775
Los Angeles, California  90025
Telephone:  (310) 295-6500
Facsimile:  (310) 295-6501

Attorneys for Plaintiff/Counter-Defendant
STAMPS.COM INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STAMPS.COM INC., | CASE NO. CV 06-7499 ODW (CTx) |
| Plaintiff, | |
| v. | **STAMPS.COM INC.'S OPPOSITION TO MOTION TO LIMIT THE NUMBER OF CLAIMS OF THE PATENTS-IN-SUIT** |
| ENDICIA, INC., and PSI SYSTEMS, INC.; | |
| Defendants, | |
| | Date: March 17, 2008 |
| ENDICIA, INC., and PSI SYSTEMS, INC. | Time: 1:30 p.m. |
| | Ctrm:11, Hon. Otis D. Wright, II |
| Counterclaimants, | |
| v. | |
| STAMPS.COM INC., | |
| Counterdefendant. | |

1

# I.    <u>INTRODUCTION</u>

The  Court should deny Defendants' Motion to Limit Claims, because the order sought by Endicia, Inc. ("Endicia") and PSI Systems, Inc. (collectively "PSI") would be premature and grossly unfair to Stamps.com.  Stamps.com agrees that it will make sense for Stamps.com to select a set of approximately 40 representative claims, but it would unfairly prejudice Stamps.com for the Court to order it to do so rather than after the close of expert discovery, for several reasons.

First, PSI is asking the Court to limit Stamps.com to eleven claims of the patents in suit, on the ground that Stamps.com declined in January 2008 to supplement its interrogatory response concerning the patent claims infringed by PSI.  What PSI fails to disclose is the reason for Stamps.com's reluctance to do so: despite repeated promises to do so, PSI had not yet produced but a small fraction – about 10%  –  of the documents sought by Stamps.com that would have explained the inner workings of its software applications and system architecture.  The technology at issue in this case can only be fully evaluated through a review of the source code and other technical documents that are under the exclusive control of PSI, and which have only recently and partially been produced to Stamps.com.  The vast majority of PSI's document production (nearly one million pages) was provided in late January 2008, <u>after</u> PSI's demand that Stamps.com supplement its interrogatory responses.  Moreover, PSI recently admitted that it has still not completed its production of documents, and Stamps.com has identified a number of significant categories of materials that appear to be largely or wholly absent from PSI's production to date.

In any event, Stamps.com served its Third Set of Interrogatory Responses on March 3, 2008.  While Stamps.com's review of the materials produced by PSI is not yet complete, these supplemental responses set forth the grounds for infringement of numerous claims of the patents in suit.

Second, Stamps.com has made a substantial investment in acquiring and

developing the technology reflected in the patents in suit.  If Stamps.com is successful in proving infringement under any one of these claims, it will be entitled to damages and an injunction.  Accordingly, while Stamps.com is willing to voluntarily limit the number of asserted claims as a matter of convenience to the Court and the parties, it should not be required to do so until after both sides have disclosed their infringement and validity contentions and the bases for those contentions through expert discovery.  After that gateway has been passed, Stamps.com will be in a position to select a relative handful of claims as to which it believes it has the strongest case.

Third, even with PSI's tardy and incomplete production, Stamps.com has developed substantial evidence of infringement of a large number of claims.  As shown below, there is a high likelihood that Stamps.com will succeed in proving infringement of multiple independent claims from each of its patents.  Accordingly, Stamps.com should not be arbitrarily limited to any subset of the claims prior to the disclosure of PSI's experts' opinions and testimony, because the claims that Stamps.com is being asked to voluntarily forego have substantial value in this case.

## II.   <u>STATEMENT OF FACTS</u>

On February 23, 2007, Stamps.com served its First Set of Requests for Production of Documents on PSI ("First RFPs").  (Paul Decl. ¶ 2)  Stamps.com's First RFPs requested that PSI produce the requested materials within 30 days.  (Id.)  Stamps.com served a Second Set of Requests for Production on August 28, 2007, a Third Set of Requests for Production of Documents on November 14, 2007, and a Fourth Set of Requests for Production of Documents on November 20, 2007.  (Paul Decl. ¶3)

PSI failed to produce any documents describing its system until December 17, 2007, when it produced approximately 105,000 pages of documents. (Paul Decl. ¶ 4)  On January 2, 2008, PSI produced an additional 68,000 pages of

documents.  (Paul Decl. ¶ 5) The vast majority of PSI's production to date was produced on January 22, 2008 (approximately 420,000 pages) and January 31, 2008 (approximately 490,000 pages).  (Paul Decl. ¶ 6)  Moreover, PSI's counsel has admitted that PSI has <u>still</u> not completed its production. (Paul Decl. ¶ 7)

On April 16, 2007, Defendants served their First Set of Interrogatories (Nos. 1-14)("Interrogatories") on Stamps.com.  (Paul Decl. ¶ 11) In Interrogatory No. 10, Defendants requested a claim chart identifying each claim of the Patents-in-Suit allegedly infringed by Defendants. (Id.)  Stamps.com timely responded on June 4, 2007, and although Stamps.com objected on the grounds that the interrogatory was a premature contention interrogatory, it identified one claim from each of the eleven patents that Plaintiff and its counsel had identified in its pre-filing investigation based on the information publically available to Stamps.com at the time.  (Paul Decl. ¶ 11; Declaration of Dennis Smith In Support of Defendants' Motion to Limit Claims ("Smith Decl") Ex. 1)  Stamps.com supplemented its Responses to the Interrogatories on July 9, 2007 and July 16, 2007, though it again objected that the Interrogatory was premature.   (Paul Decl. ¶ 12; Smith Decl. Ex. 4 & 5)  As of the dates of these supplemental responses, Defendants had not yet produced any documents relating to the accused products. (Paul Decl. ¶ 12)

On December 20, 2007, three days after its initial production representing a mere **10%** of documents produced to date, PSI's counsel demanded a conference to discuss Stamps.com's response to Interrogatory No. 10 and requesting that Stamps.com limit its claims.  (Graves Decl. ¶ 2; Ex. 66  Stamps.com's counsel replied on December 27, 2007 reiterating Stamps.com's objection that Interrogatory No. 10 was premature.  (Graves Decl. ¶ 3; Smith Decl., Ex. 9)

During the January 10, 2008 conference on PSI's motion to limit the claims, PSI's counsel stated that Stamps.com could not be expected to exclude any of the asserted claims until Defendants had completed discovery.  (Graves Decl. ¶ 4) Plaintiff's counsel assured Defendants' counsel that Stamps.com would eventually

voluntarily limit the claims asserted, but was not in a position to do so at the time. (Graves Decl. ¶ 4)  PSI's counsel stated that PSI had produced about 80% of its document production as of that date.  (Graves Decl. ¶ 5) In part due to counsel's representation that the vast majority of documents had already been produced, counsel for Plaintiffs stated that Stamps.com hoped to provide a supplemental response to Interrogatory No. 10 by January 18, 2007.  (Graves Decl. ¶ 5) However, in reviewing the materials that had been produced by PSI, it became apparent that the vast majority of the requested documents had not yet been produced.  (Graves Decl. ¶ 6)

On March 3, 2008, Stamps.com provided its Third Supplemental Response, identifying 240 claims that have been infringed by PSI and 244 claims requiring more information for an infringement analysis.  (Paul Decl. ¶ 13)

### III.    ARGUMENT

### A.    An Order to Limit Claims at this Time would be Premature and Unfairly Prejudicial to Stamps.com

Stamps.com recognizes the Court's power to limit the number of claims and agrees that 629 claims is not a practical number of claims to litigate at trial. For that reason, Stamps.com has already represented to PSI that it will *voluntarily* limit the number of claims, and indeed Stamps.com anticipates that it will limit the number of claims to no more than approximately 40 claims following the close of expert discovery.  However, requiring Stamps.com to limit the asserted claims at this stage in the litigation would be unfairly prejudicial to Stamps.com, for a variety of reasons.

First, PSI has not yet completed its production of documents in response to Stamps.com's First and Second RFPs.  The materials that PSI has not yet seen fit to produce to Stamps.com include customer specific uses of Endicia's products, network protocols, technical operation of fincncial transactions, such as payments to shippers and the U.S.P.S., detailed design documents, detailed

1   engineering documents, bug reports, and acquisition documents.  (Paul Decl. ¶ 8)

2   In addition, PSI has still not produced any substantial volume of documents

3   regarding at least two of the PSI products that Stamps.com alleges infringe the

4   patents in suit – Platinum Shipper and Instapostage.  (Paul Decl. ¶ 9)  This is the

5   subject of a discovery dispute between the parties, which will likely soon result in

6   a motion to compel.  (Id.; Ex. 54)  Furthermore, Stamps.com has not had an

7   adequate opportunity to review the nearly one million pages of documents that PSI

8   produced in late January 2008.

9        PSI's failure to comply with its discovery obligations is important, because

10  the software technology at issue in this case cannot be fully evaluated solely on the

11  face of the product.  To fully understand the functionality of the type of technology

12  at issue here, involving software programs and the operation of a client-server

13  system in which much of the functionality transpires in a secure environment at

14  PSI to which Stamps.com does not have access, it is necessary to review the

15  computer source code and other technical documents that explain the architecture

16  of the system in order to fully evaluate infringement under a variety of the claims

17  of the patents in suit.  *See also, Dynamic Microprocessor Associates v. EKD*

18  *Computer Sales,* 919 F. Supp. 101, 104 (E.D.N.Y. 1996).  Accordingly, PSI's

19  ongoing failure to produce the materials that are required in order to conclusively

20  determine which of the numerous claims are most strongly infringed by PSI's

21  accused products makes a mockery of its demand that Stamps.com be limited at

22  this point to any particular number of claims.

23        Second, the purpose of selecting a set of representative claims is to limit the

24  scope of the issues to be addressed at trial, while still providing the plaintiff a fair

25  opportunity to put on its best case.  Because infringement of even a single claim of

26  the hundreds contained in the patents in suit would suffice to support an award of

27  damages, *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1236 (Fed. Cir.

28  2005), the Court should permit Stamps.com a fair opportunity to select its strongest

claims.  However, Stamps.com will not be in a position to select the particular representative claims from each of the patents that it intends to go forward with at trial until after the close of expert discovery, because only then will both parties have disclosed all of their evidence and the bases for their infringement and invalidity arguments.  Stamps.com paid $7,500,000 for the portfolio of intellectual property that includes nine of the eleven patents in suit, and it would gut the value of the investment that Stamps.com made in this technology for the Court to order Stamps.com to select its representative claims before PSI has disclosed the substance of its invalidity contentions.  As shown below, even hindered by PSI's tardy and incomplete production Stamps.com has developed substantial evidence that numerous claims of these patents are infringed by PSI's accused products.  It would be grossly unfair to require Stamps.com to voluntarily abandon strong arguments for infringement of numerous claims of the patents in suit before Stamps.com has even been provided discovery from PSI's experts regarding PSI's non-infringement and invalidity contentions.  After both sides have laid their cards on the table, Stamps.com will select a set of approximately 40 representative claims from the patents.

Third, when courts do order a plaintiff to select a set of representative claims, they often do not do so until a later stage in the litigation than Stamps.com proposes – indeed, even at the eve of trial.  *NTP, Inc. v. Research In Motion, Ltd.*, 270 F. Supp. 2d 751, 761 (E.D. Va. 2003) (court compelled plaintiff to reduce number of claims following *Markman* hearing); *Verizon California Inc. v. Katz Licensing Technology*, 326 F. Supp. 2d 1060, 1066 (C.D. Cal. 2003) (court compelled patent holder to reduce number of claims prior to *Markman* hearing.); *Katz v. AT&T Corporation*, 63 F. Supp. 2d 583, 588 (E.D. Penn. 1999) (court ordered parties to designate a reduced number of claims to be construed at a *Markman* hearing).  Here, Stamps.com has agreed to limit itself to a set of representative claims prior to the *Markman* hearing on claim construction.

Stamps.com intends to voluntarily limit the number of claims it is asserting to no more than 40 claims by the expert discovery cut-off date (i.e., before the Court is required to construe any claim construction as part of the parties' summary judgment motions or at trial).  This limitation is reasonable given the technology at issue in this case, and will not prejudice any of the parties.  An order to limit the number of claims at this time would be not only premature and unfairly prejudicial to Stamps.com, but is also unnecessary given Stamps.com's agreement to voluntarily limit the claims that it intends to pursue following the close of expert discovery.  Accordingly the Court should deny Defendants' Motion.

**B.**     **There is Substantial Evidence of Infringement under a Large Number of Independent Claims**

The Court should permit Stamps.com sufficient time to fully weigh the strength of its infringement and validity positions with respect to the claims of the patents in suit before selecting a set of representative claims.  As shown below, Stamps.com has adduced substantial evidence of infringement under numerous independent claims of the patents in suit.  The showing below is merely exemplary, and focuses principally on the independent claims of the Stamps.com patents.  In total, Stamps.com's Third Supplemental Interrogatory Responses identify and provide the grounds for infringement of 244 claims.  (Paul Decl. ¶ 13)  No inference should be drawn that references to infringement by one PSI product exclude evidence of infringement by other products, or that particular infringement arguments set forth below are exclusive of others, particularly given the fact that PSI has apparently failed to produce substantial materials regarding Instapostage, Platinum Shipper and other items.  Nevertheless, the following explanation highlights the prejudice that Stamps.com would suffer were the Court to limit the claims at this time and in the manner sought by PSI.

**1.**     **The Law Governing Patent Infringement**

Analyzing infringement requires two steps. "First, the court must construe the asserted claim. Second, the court must determine whether the accused product or process contains each limitation of the properly construed claims, either literally or by a substantial equivalent." *Freedman Seating Co. v. American Seating Co.,* 420 F.3d 1350, 1356 -1357 (Fed. Cir. 2005). Step one, claim construction, is a question of law. *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005). When construing a claim, the court principally consults the intrinsic evidence, *i.e.*, the claims themselves, the written description, and the prosecution history. *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Words in the claims are ascribed the ordinary meaning that they would have to one skilled in the art unless it appears that the inventor used them differently. *Id*. Step two, comparison of the claims to the accused device, is a question of fact, and involves a determination that every claim limitation or its equivalent is found in the accused device." *N. Am. Container*, 415 F.3d at 1344.

In addition, claim limitations stated in "means plus function" language are rebuttably presumed to be governed by § 112 ¶ 6, which provides that means-plus-function limitations "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *See* 35 U.S.C. § 112, ¶ 6. Thus, to construe a means-plus-function limitation, the Court must first identify the recited function, and then locate the structure in the specification that corresponds to that function. *JVW Enterprises, Inc. v. Interact Accessories, Inc.,* 424 F.3d 1324, 1330 (Fed. Cir. 2005).

## 2.   **PSI's System**

PSI operates a computer system that enables it to provide postage to its customers, which may be printed on a label or envelope. ((Declaration of Patrick McDaniel ("McDaniel Decl.") ¶ 8. Many of PSI's customers download a software application from PSI's website, which resides on the customer's computer and enables the customer to request postage from PSI. (Id.) One of these programs is

1 named DAZzle.  (Id.)  The customer then authorizes PSI to charge the customer's

2 credit card, in order to establish an amount of postage credit (e.g., $50).  (Id.)

3 After these steps are completed, the customer may request postage to be printed

4 onto a label or envelope.  (Id.)

5      PSI's system is currently comprised of various servers, including two Dell

6 Poweredge 6600 servers, i.e., computers that process and serve data to other

7 networked computers, and an EMC CX300 Storage Array that functions as the data

8 storage for the two Dell 6600 servers.  (Montgomery Decl. ¶ 4)  The EMC CX300

9 Storage Array is a disk array storage system that contains an array of up to 60 hard

10 drives.  (Exs. 77 & 78)  The hard drives are contained in disk modules, which are

11 small, light and intended to serve as carriers for the hard drives.  Prior generations

12 of PSI's system used earlier models of Dell Poweredge servers, which had "hot

13 swappable" hard drives for data storage, which were also small, light and portable.

14 The customer account data, including the amount of postage credit that is available

15 to the customer, is stored in portable disk modules within the EMC CX300 Storage

16 Array coupled to PSI's servers.  (Montgomery Decl. ¶ 4)

17      When a PSI customer wishes to print out postage, she logs into DAZzle by

18 entering a password, and is then directed to PSI's servers.  (McDaniel Decl. ¶ 9)

19 She enters information regarding the mailpiece, such as the addressee information

20 and the type of media (e.g., post card or envelope).  (Id.)  The request is then

21 transmitted over the Internet to PSI, where the customer account data stored on the

22 disk modules is loaded into a postal cryptographic coprocessor ("PCC") to process

23 the request.  (Id.)  A PCC is a small, portable processor that performs

24 cryptographic functions that can be used to create a highly secure environment for

25 processing, for example, large volumes of financial transactions.  (McDaniel Decl.

26 ¶ 10)  The requested postage is debited from the customer's account and a data

27 packet representing a postage indicia is generated.  (Id.)  The postage data is then

28

OPPOSITION TO MOTION TO LIMIT THE NUMBER OF CLAIMS OF THE PATENTS-IN-SUIT

transmitted back to the customer's computer, and the indicia is printed onto an envelope, label or post card.  (Id.)

### 3. Stamps.com's Patents in Suit

#### a. U.S. Patent No. 5,510,992

U.S. Patent No. 5,510,992 ("the '992 Patent") (Ex. 55)  is the pioneer patent in the field of PC Postage.  (Ex. 66)  The specification of the '992 Patent describes a system for printing postage in which postage credit is stored on a memory device and printed onto an envelope or label using a normal printer coupled with a general purpose computer.  PSI's motion does not seek to preclude Stamps.com from proving infringement of claim 9; accordingly, Stamps.com will not address the evidence demonstrating infringement of that claim.

Claim 19 recites a method of outputting postage data under control of a general purpose processing system (e.g., a computer), comprising (i) loading into the computer a program containing instructions for directing the computer to interact with a user to control outputting of the postage data, (ii) inserting a storage device into a temporary holder connected to the computer, containing postage data as well as a unique unalterable identity of the storage device, (iii) verifying under control of a handshake that the storage device and the program are both authorized, using the unique data retrieved from the storage device, (iv) retrieving postage from the storage device, (iv) outputting postage data along with data operable for printing postage to a general purpose printer.

PSI's system infringes claim 19.  (McDaniel Decl. ¶ 14)  PSI's servers have programming that directs the servers to accept and respond to requests for postage from PSI customers.  (McDaniel Decl. ¶ 15; Ex 14)  The disk modules constitute storage devices, and they are portable (although portability is not a requirement of the claim).  (McDaniel Decl. ¶ 15 ; Ex. 37)  The disk modules that are removably connected to the CX300 Storage Array are inserted into a holder that connects them temporarily, because they may later be removed.  (McDaniel Decl. ¶ 15; Ex.

37)  Each hard disk has a serial number in firmware that is unique and unalterable. (McDaniel Decl. ¶ 15)  This serial number is retrieved from the hard disk and stored in another location.  (Id.) The customer account data includes the amount of postage credit available to each customer.  (Id.; Ex. 29, p 11) (screen shot)   When a customer requests postage, the PSI server determines which hard disk is storing that customer's account data using, among other things, the retrieved serial number, and determines that the hard disk and the program are both authorized for the transaction by whether secured data is validated using the system's cryptographic keys.  (McDaniel Decl. ¶ 16)  This is the handshake.  (McDaniel Decl. ¶ 16)  The customer account data is then loaded into the PCC, where the postage indicium data is created and the postage in the customer's account is decremented by the amount of the requested postage.  (McDaniel Decl. ¶16; Ex. 29, p 11)   At the conclusion of this process, the postage indicium data is sent from PSI's server to the customer's PC, with data (such as a success code) that is operable for printing the postage indicium.  (McDaniel Decl. ¶ 16; Ex 28 - PSI 00066425)

Claim 29 recites a processor-based system adaptable for inputting postage data to a universal data storage means, including (i) means for removably coupling the data storage means to the system, (ii) means, including unique data unalterably stored in the storage means, for verifying that the storage means is authorized to receive postage data, (iii) the verification must use the unique data retrieved from the storage means, (iv) means for receiving user input regarding a desired amount of postage to be stored within the storage means, (v) means for transferring the desired amount of postage to the storage means, (vi) means for storing an identification pertaining to the system within the storage means along with the postage data, and (vii) means for displaying an identification of the storage means to a user.  (McDaniel Decl. ¶ 17)

PSI's system infringes claim 29.  As shown above, the disk modules are data storage means, the hard drive serial number is an unalterable unique identifier, and the system verifies authorization using, among other things, the serial number. (McDaniel Decl. ¶ 18; Ex. 23)  When logged on to their account, a customer may provide her credit card information over the Internet for purposes of increasing the value stored in the customer's account.  (McDaniel Decl. ¶ Id; Ex. 21 – PSI 00105352)  The PSI system then establishes a communications link with the accounting server at the credit card company or postal or shipping service and value is transferred to the customer's account stored on the hard disk at PSI. (McDaniel Decl. ¶ 18; Ex. 21 – PSI 00105352)  The customer account data (among other things) constitutes an identification pertaining to the system, and this data is stored in the hard drives.  (McDaniel Decl. ¶ 18; Ex. 29, p 16)

### b.   U.S. Patent No. 5,682,318

U.S. Patent No. 5,682,318 ("the '318 Patent") (Ex. 56)   largely shares the specification of the '992 Patent, and the claims of the '318 Patent focus on remote replenishment of a customer's postage account.  PSI does not seek to preclude Stamps.com from proving infringement of claim 11.

Claim 1 recites a computer program product having both computer program logic recorded thereon and a general purpose storage for printing a desired amount of postage onto a piece of mail, including (i) a computer readable storage medium, directly accessible by the computer, which stores a computer program; (ii) the computer program including a means for storing data pertaining to a total amount of postage in the storage, and a means for coupling the computer system to a remote computer to increase the amount of stored postage.  (Ex. 56)

PSI's system includes computer readable storage media (i.e., the hard drives coupled to the CX300 Storage Array and the hot swappable hard drives within PSI's servers) directly accessible by PSI's servers, which have computer programming for storing customer account data, including the amount of postage

OPPOSITION TO MOTION TO LIMIT THE NUMBER OF CLAIMS OF THE PATENTS-IN-SUIT

available to each customer.  (McDaniel Decl. ¶ 20; Ex. 22)  PSI's servers have stored on their hard drives programming for coupling the server to a remote computer system (such as, for example, a user's computer or a server containing customer financial data for VISA or Mastercard), allowing the remote system to communicate with the hard drives within the CX300 Storage Array to increase the amount of postage stored in the disk modules, as well as hardware for enabling data transfer.  (McDaniel Decl. ¶ 20)  Thus, the PSI system infringes claim 1.

Claim 29 recites a method of using a computer system to print postage onto a piece of mail, including (i) storing postage data on a storage means having direct data access to a general purpose computer, and (ii) coupling the general purpose computer to a remote computer system to increase the amount of postage stored in the storage means.  (McDaniel Decl. ¶ 21) As shown above, PSI stores postage data in the hard drives coupled to the CX300 Storage Array, and PSI's servers are coupled with a remote computer when a customer provides additional postage value for his account.  (McDaniel Decl. ¶ 22) Accordingly, PSI infringes claim 29.

### c.    <u>U.S. Patent 5,717,597</u>

U.S. Patent 5,717,597 ("the '597 Patent") (Ex. 57)   discloses, among other things, a system and method for printing postage as well as personalized postage indicia onto a label or an envelope.  PSI does not try to preclude Stamps.com from proving infringement of claim 34.

Claim 1 recites a processor-based system for printing postage, where the system is running a document generating program (e.g., MS Word) and a separate postage generating program, including (i) an interface program integrating the document generating program and the postage generating program, (ii) means for temporarily coupling the programs to a postage storage device, (iii) means for automatically calculating the correct amount of postage for a particular document using mailing parameters specific to the document entered by the user, (iv) means for formatting data operable to print the postage, (v) means for selectively creating

a postage indicia together with the postage, and (vi) means for printing the postage and the postage indicia. (McDaniel Decl. ¶ 23)

Claim 1 is infringed by PSI's DAZzle application.  (McDaniel Decl. ¶ 24)  PSI's DAZzle application is loaded onto a PSI customer's computer (i.e., a processor-based system).  (McDaniel Decl. ¶ 24; Ex. 49)  A customer's computer may run both DAZzle and MS Word.  (McDaniel Decl. ¶24; Ex. 50)  The DAZzle application includes macros that integrate DAZzle with MS Word.  (Exs. 1; 2, p.17, 19)  Once integrated, a user can access both programs by selecting the "Print Envelope" option from the File menu in Word.  (Ex. 2, p. 18)  After the user selects Print Envelope, the user is redirected to the DAZzle interface, where the user is prompted for his password to establish a connection with a PSI server.  (Ex. 4)  After the user logs in, his computer is temporarily coupled to the disk modules in the CX300 Storage Array at PSI, where his account data (including the postage value available in his account) is stored.  (Exs. 5, p. 26; 6, p.33; 7; 21, p.76)  To print postage indicia, the user enters certain postage parameters, such as, for example, media type (e.g., post card, envelope, labels), weight and class.  (Ex. 8)  The DAZzle program then calculates the correct amount of postage using the entered parameters and displays this amount on the envelope.  (Ex. 8)  The user can select a particular graphical indicia from among a number of different graphical indicia by clicking the "Graphic" item under the "Insert" menu of DAZzle.  (Exs. 9, 10, 11)  This graphical indicia will then be printed together with the postage.  (Ex. 11)  To print the postage, the user selects "Print" from the "File" menu.  (Ex. 12, 13)

### d.    U.S. Patent No. 5,812,991

U.S. Patent No. 5,812,991 ("the '991 Patent") (Ex. 58)   discloses a client-server architecture in which a user may request and receive postage from a remote processor-based system.  PSI does not try to preclude Stamps.com from proving infringement of claim 45.

15

Claim 1 recites a closed metering system for transferring value from a portable processor device storing representative value (such as a hard drive), which is coupled to a host subsystem (such as a server at PSI), to selected affiliated customer subsystems.  The system includes (i) a customer subsystem, wherein at least one of the host and customer subsystems is operable to perform non-metering functions, (ii) means, executing in part on the customer subsystem, for transferring value from the portable processor to the customer subsystem, and (iii) means for printing an indicia.  (Ex. 19)

PSI's system infringes claim 1.  The PSI system is closed in that access is restricted to only those subscribing customers who can provide the appropriate password.  (McDaniel Decl. ¶ 26; Exs. 4, 24)  As shown above, PSI's system includes multiple portable hard drives (i.e., the disk modules in the CX300 Storage Array) storing customer postage value, which are coupled to two Dell Poweredge servers at PSI.  (McDaniel Decl. ¶ 26; Exs. 5, p.26; 6, p.33; 7; 21 p.76)  The PSI servers and hard drives are coupled to numerous customer computers over the Internet.  (McDaniel Decl. ¶ 26; Ex. 21, p.77)  The customer computers are operable to perform non-metering functions (such as running word processing programs).  (Ex. 50)  The DAZzle application, which is loaded onto and executes on the customers' computers, requests that the postage value be transferred from the customer's account at PSI to the customer's computer.  (McDaniel Decl. ¶26; Ex. 21, p.78; 49)  The postage value transferred from the hard drives at PSI to the customer's computer are printed out on a standard printer or label maker. (McDaniel Decl. ¶26)

Claim 80 recites a network node apparatus for transferring monetary equivalent value from a portable processor device to a plurality of network nodes, including (i) a processor-based system (e.g., a server) in information communication with a plurality of network nodes, (ii) a refreshable memory device coupled to the server, (iii) means for a node to request value from the server, (iv)

16

1    means for removing the requested value from the memory device, (v) means for

2    communicating the value from the server to the requesting node.

3         PSI's system infringes claim 80.  A "network node" includes, but is not

4    limited to, a server or other computer connected to a network such as the Internet.

5    (McDaniel Decl. ¶ 27)  Thus, the servers at PSI as well as the customer computers

6    are all network nodes.  The hard drives in the CX300 Storage Array are refreshable

7    memory devices.  (McDaniel Decl. ¶ 27)  Upon request, postage value is

8    transmitted from the customer's account at PSI to the requesting customer's

9    computer.  (McDaniel Decl. ¶27; Ex. 26, p.111)

10        Claim 40 discloses the method of transferring value from a portable memory

11   device temporarily coupled to a host system to a customer's computer by a

12   communication link, and printing the postage indicia.  For all the reasons stated

13   above, the method disclosed in Claim 40 is practiced when a customer purchases

14   postage using DAZzle or other PSI products.

15            **e.**      **U.S. Patent No. 5,819,240**

16        U.S. Patent No. 5,819,240 ("the '240 Patent") (Ex. 59)   discloses a system

17   and method for printing a postage meter stamp, including a desired postage amount

18   and a personal postage indicia, onto a piece of mail.  PSI does not try to preclude

19   Stamps.com from proving infringement of claim 68.

20        Claim 18 recites a method of printing postage for mailing a document

21   created within a general purpose processor-based system (e.g., a user's computer)

22   including (i) automatically calculating the postage for a document as a function of

23   the mailing parameters, (ii) formatting data for printing the postage, in which the

24   formatting involves (iii) creating, at least in part on the user's computer having a

25   portable memory coupled thereto, a postage indicia together with the postage,

26   including (iv) receiving information from a user regarding the postage indicia

27   independent of the mailing parameters and independent of the user, and (v) the

28   creating step being substantially contemporaneous with the printing of the postage.

(Ex. 59)

Users of PSI's products infringe claim 18.  For example, DAZzle enables a user to print postage that may be used to mail a document created within the user's computer.  (McDaniel Decl. ¶ 31; Ex 14)  The user's computer is remotely coupled to the hard drives in the CX300 Storage Array.  (McDaniel Decl. ¶ 31)  The DAZzle application automatically calculates the correct amount of postage for a document as a function, at least in part, of parameters entered into the system that are specific to the particular document.  For example, a user may enter mailing parameters into the "Postage Options Rate" menu when running the DAZzle application, and the DAZzle application calculates postage based on those parameters.  In addition, DAZzle enables a user to select from a menu of graphics that may be printed together with the postage.  (McDaniel Decl. ¶ 31; Ex 10)  This graphics selection may be independent of mailing parameters and independent of information with respect to the system user.  (McDaniel Decl. ¶ 31)  The creation of the indicia may be substantially contemporaneous with the printing of the postage.  (McDaniel Decl. ¶ 31)  DAZzle enables a user to print the graphic and the postage by hitting the "Print" icon in the toolbar or selecting "Print" from the File menu.  (Exhibit 12)

Claim 37 recites a method for printing posting indicia on a mailing envelope including the steps of (i) storing postage indicia data in a general purpose processor based system (e.g., a user's computer) coupled to a postage credit memory device, (ii) receiving input from a user regarding selection of a particular postage indicia from the stored data, and (iii) printing the selected postage indicia on a general purpose printer substantially contemporaneously with the selecting step. (McDaniel Decl. ¶ 32) As shown above, the DAZzle application enables a PSI customer to perform all of these steps.  (Id.)

Claim 40 recites a method of controlling the printing of a selected postage indicia on a piece of mail, including the steps of: (i) displaying a plurality of

18

postage indicia on a general purpose processor-based screen temporarily associated

with a portable memory, and (ii) a user selecting a particular displayed indicia and

in temporal proximity to sending the indicia to a printer.  (McDaniel Decl. ¶ 34)

DAZzle causes multiple graphical indicia to be displayed on the monitor of a user's

computer by clicking on "Insert" from the toolbar and selecting "Graphic," which

generates a screen on the user's monitor displaying a selection of pre-stored

graphical configurations of postage indicia.  (Exhibit 10)  Thus, a DAZzle user

infringes claim 40.

Claim 51 recites a general purpose processor-based system for printing a

desired amount of postage for mailing a document, including (i) means for

communicating between the system and a postage storage memory, (ii) means for

determining a correct amount of postage for a document, (iii) means for selecting a

particular postage indicia to be printed whereby the selecting includes user input,

and (iv) means for formatting data to be sent to a printer coupled to the system, in

which the formatting and selecting means are operable substantially

contemporaneously.  As shown above, the user's system is remotely coupled to the

hard drives at PSI storing postage value, and the DAZzle application programs a

user's computer to perform of these functions.  (McDaniel Decl. ¶ 35)  Thus, PSI

infringes claim 51.

### f.    U.S. Patent No. 6,208,980

U.S. Patent No. 6,208,980 ("the '980 Patent") (Ex. 60)   discloses, among

other things, a system and method for printing outbound and associated return

postage for an outbound and associated return document.  PSI does not seek to

preclude Stamps.com from proving infringement of claim 26.

Claim 34 recites a system for generating an outbound and return postage

indicia, including (i) means for interfacing with a document generating program

for generating outbound and return documents, (ii) means for determining the

correct postage for mailing the outbound and return documents, (iii) means for

generating the outbound and return postage indicia, and (iv) means for printing the outbound and return postage indicia substantially concurrently.  (Ex. 60)

PSI's DAZzle product infringes claim 34.  The DAZzle application includes macros that integrate DAZzle with MS Word.  (Exs. 1; 2, p.17, 19)  Once integrated, a user can create a word document and choose to print postage indicia with which to mail that document by selecting the Print Envelope option from the File menu.  (Exs. 2, p.18; 3)  After the user selects Print Envelope, the user is redirected to the DAZzle interface, where the user enters certain postage options, such as, for example, media type, weight, and class.  (Ex. 4)  After the user has entered postage options, the user can print the outgoing postage by selecting Print under the File menu.  (Exs. 12, 13)  The user can also print reply postage associated with the outgoing postage by checking the "Print as Reply Postage" option in the Premium Service Options tab of the Postage Options menu.  (Ex. 2, p.20; 15, 16).  DAZzle will automatically calculate the new postage rate to for the reply postage.  (Ex. 2, p.20; 15, 16, 17, 18)  The user need only select Print from the File menu, exactly as before, to print the reply postage.  (Ex. 19)  Finally, the reply postage can be printed immediately following the printing of the outbound postage.  (McDaniel Decl. ¶ 37)

### g.   U.S. Patent No. 6,233,568

U.S. Patent No. 6,233,568 ("the '568") (Ex. 61) covers a client-server architecture for authorizing a transaction to be conducted using a particular service provider selected from among a multiplicity of providers.  PSI does not seek to preclude Stamps.com from proving infringement of claim 1.

Claim 21 recites a general processor-based system for authorizing a transaction, wherein information regarding the transaction as conducted by each of a number of providers is presented for selection of a particular provider, including (i) means for determining the transaction's parameters, (ii) means for determining a value of the transaction associated with the multiple service providers, (iii) means

1  for presenting each of the determined values for comparison, (iv) means for

2  selecting a provider as a function of the comparison, and (v) means for printing

3  authorization information acceptable to the selected provider.  (Ex. 61)

4          PSI's Platinum Shipper product operates on a user's computer.  (McDaniel

5  Decl. ¶ 39)  It enables the user to authorize a shipping or mailing transaction to be

6  conducted using a particular provider, such as the USPS, UPS or FedEx, based on

7  the rates charged by each of the providers.  (Ex 42)  The Platinum Shipper

8  application obtains shipment data, including weight and package dimensions, from

9  shipping providers and customer input and determines other parameters (*e.g.*, a

10  piece of mail's class and zone) with respect to the desired shipment.  (Ex 43)  The

11  application determines a value (*e.g.*, cost of shipping a piece of mail) of the

12  transaction associated with two or more of the plurality of providers (*e.g.*, USPS,

13  UPS or Fed Ex) utilizing the transaction parameters entered by the user.  (Ex 45)

14  The application enables a user to select a provider as a function of the comparison,

15  and it provides for the printing of authorization information (*e.g.*, indicia)

16  acceptable by the selected provider.  (Ex 42)  Accordingly, Platinum Shipper

17  infringes claim 21.

18          Claim 38 recites a system for retrievably storing information on transactions

19  (such as mailing or shipping transactions), including (i) a portable memory for

20  storing transaction information including a processor that restricts access to the

21  memory, (ii) at least one input device that accepts inputted transaction information,

22  (iii) the portable memory removably coupled to a computer, which is programmed

23  to determine information specific to different transaction facilitators (e.g.,

24  shippers) as a function of aspects of the desired transaction, (iv) an interface device

25  accepting information specific to certain facilitators and presenting it for selection

26  of a particular facilitator, and (v) a printer coupled to the computer for printing

27  authorization information.  (McDaniel Decl. ¶ 40)

28

OPPOSITION TO MOTION TO LIMIT THE NUMBER OF CLAIMS OF THE PATENTS-IN-SUIT

1    As shown above, a PSI customer's computer is remotely coupled to the hard

2 drives at the CX300 Storage Array that store her postage value, and access to the

3 data on the hard drives is restricted by the use of passwords, among other things.

4 (Ex. 4)  As shown above, the Platinum Shipper application programs the user's

5 computer to accept input regarding the transaction from the user, the user's

6 computer displays information regarding the various facilitators (e.g., USPS, UPS

7 or FedEx), and the postage or shipping indicia is printed by a printer.  (Exs. 42-43)

8 Thus, PSI infringes claim 38.

9              **h.      U.S. Patent No. 6,249,777**

10    U.S. Patent No. 6,249,777 ("the '777 Patent") (Ex. 62)   discloses, among

11 other things, a system and method in which multiple remotely located computers

12 are coupled over a network to a central server that dispenses postage on request.

13 PSI does not seek to preclude Stamps.com from proving infringement of claim 31.

14    Claim 1 recites an apparatus for distributing value (e.g., postage) to

15 customer computers in response to purchase demands, including (i) means for

16 accepting demands for postage, wherein the apparatus is adapted to accept

17 demands from customer computers substantially simultaneously, (ii) means for

18 storing independent postage credits, (iii) means for automatically deducting the

19 postage from the credits, and (iv) means for transmitting a postage data to the

20 requesting customer's computer.  (Ex. 62)

21    PSI's system distributes postage value to customers' computers over the

22 Internet.  (McDaniel Decl.; Ex. 14)  The postage is delivered nearly immediately in

23 response to customer requests, and PSI's system is capable of accepting multiple

24 demands for postage substantially simultaneously.  (McDaniel Decl. ¶ 43; Ex. 21,

25 p.77)  Each PSI customer has an account, and customer account data is stored in

26 portable disk modules in the CX300 Storage Array.  (McDaniel Decl. ¶ 43; Ex. 5,

27 p.26; 6, p.33; 7, 21, p.76)  When a customer requests postage, the requested

28 amount of postage is deducted from the postage value in her account.  (McDaniel

22

Decl. ¶ 43; Ex. 23, p.82)  A data packet corresponding to the requested amount of postage is then transmitted over the Internet to the customer's computer. (McDaniel Decl. ¶ 43; Ex. 26, p.111)  Thus, Claim 1 is infringed.

### i.   U.S. Patent 6,889,214

U.S. Patent 6,889,214 ("the '214 Patent") (Ex. 63)   discloses, among other things, a system in which postage requests are processed in a secure environment. PSI does not seek to preclude Stamps.com from proving infringement of claim 1. Due to PSI's tardy and still deficient document production, Stamps.com is still evaluating infringement under the remaining independent claims of the '214 Patent.

### j.   U.S. Patent No. 6,982,808

U.S. Patent No. 6,982,808 ("the '808") (Ex. 64) discloses, among other things, a method and system for printing postal indicia on envelopes.  PSI does not seek to preclude Stamps.com from proving infringement of claim 1.

Independent Claims 30 and 36 recite a system for printing postal indicia, including (i) means for determining a printer offset as a function of how an envelope is fed into a printer, (ii) means for mapping an image onto a virtualized sheet, (iii) means for generating a print job for the virtualized sheet, wherein the image is located within a printable region of the virtualized sheet as a function of printer offset, and (iv) a printer for printing the indicia onto an envelope. (McDaniel Decl. ¶ 48)

PSI's DAZzle application programs a user's computer to determine a printer offset as a function of how the envelope is fed into the printer.  DAZzle allows a user to enter an envelope orientation into the "Guide Me! Printer" setup module to determine printer offset as a function of how an envelope is fed into the printer. (Ex. 40, 41)  Prior to printing, the DAZzle application displays an onscreen "virtual image" of the final envelope on the customer's computer screen.  (Ex. 42) This virtual image demonstrates that DAZzle maps the postal image onto a

virtualized sheet.  The virtual image of the envelope, as displayed on the customer's computer screen, may be printed in its entirety.  (McDaniel Decl.)  Thus, claim 30 is infringed.

Claim 36 recites computer-readable media embodying a program of instructions executable by a computer to perform steps substantially identical to those recited in claim 30.  PSI's DAZzle application is a computer program executable on a user's computer to perform the steps of claim 30.  Thus, claim 36 is infringed.

In addition, at least dependent claims 32, 38 and 40 are also infringed.  Dependent Claims 32 and 38 recite the system and method of claim 30 and 36, respectively, wherein the printer offset is determined by sending a print job having one or more patterns to the customer's printer.  As part of the printer setup, PSI's DAZzle software prints a test envelope with boxes in a test pattern and asks the user to indicate which boxes have printed completely on the test envelope.  (Ex. 43. 44)  Thus, claims 32 and 38 are infringed.

Dependent claim 40 recites the method of claim 36, wherein the printed postal indicia includes a FIM.  A FIM is a specialized marking used by the United States Postal Service to assist in the automated processing of mail.  (McDaniel Decl.  ¶ 52; Ex. 45)  PSI's DAZzle prints a FIM as part of postal indicia.  (Ex. 46).  Thus, claim 40 is infringed.

### k.     U.S. Patent No. 6,965,451

U.S. Patent No. 6,965,451 ("the '451") (Ex. 65) is also directed to, among other things, a method and system for printing postal indicia on envelopes.  PSI does not seek to preclude Stamps.com from proving infringement of claim 5.

Claim 7 recites a method of printing information onto a print media (such as an envelope), including (i) querying one or more databases containing set up data on at least one printer driver to determine set up data for the user's printer, (ii) performing a printer configuration test to determine the set up data for the user's

1  printer, (iii) storing results of the printer configuration test in one of the databases,

2  and (iv) printing the information onto the media in accordance with the set up data.

3      DAZzle queries the Windows registry, which contains printer driver

4  information that can be used to determine set up data for the user's printer.  (Ex.

5  47, 48)  DAZzle also allows a user to utilize the "Guide Me! Printer" setup

6  program to help determine set up data for the user's printer.  (Ex. 40)  DAZzle

7  requires a user to run a configuration test to determine the set up data for the user's

8  printer, in which a series of shapes (such as triangles and squares) are printed on a

9  test sheet.  (Ex. 43, 44)  The results from the "Guide Me! Printer" setup program

10  are at least partially stored in the registry, as reflected by the fact that subsequent

11  users of the program do not have to run the "Guide Me! Printer" setup program to

12  print with the same formatting.  (Ex. 47, 48)  Thus, PSI's DAZzle application

13  induces users to infringe claim 7.

14      Claim 16 is the system claim that corresponds to claim 7.  It recites a system

15  for printing information onto a media, including (i) means for querying one or

16  more databases containing set up data on at least one printer driver to determine set

17  up data for the user's printer, (ii) means for performing a printer configuration test

18  to determine the set up data for the user's printer, (iii) means for storing results of

19  the printer configuration test in one of the databases, and (iv) means for printing

20  the information onto the media in accordance with the set up data.  For the reasons

21  set forth above, DAZzle infringes claim 16.  (McDaniel Decl. ¶ 55)

## IV.    CONCLUSION

23      For the foregoing reasons, the Court should deny Defendants' Motion to

24  Limit the Number of Asserted Claims of the Patents-In-Suit,

25  DATED:  March 3, 2008                    GRAVES LAW OFFICE P.C.

26

27                                    By: _____
                                         Philip J. Graves
28                                       Monick T. Paul
                                     Attorneys for STAMPS.COM INC.

## PROOF OF SERVICE

I am over the age of eighteen years and not a party to this action.  My business address is Graves Law Office, P.C., 11400 Olympic Boulevard, Suite 200, Los Angeles, California 90064.

On March 3, 2008, I served the following document entitled

## STAMPS.COM INC.'S OPPOSITION TO MOTION TO LIMIT THE NUMBER OF CLAIMS OF THE PATENTS-IN-SUIT

on all interested parties to this action in the manner prescribed as follows:

| | |
|---|---|
| Gregory A. Long, Esq.<br>Dennis J. Smith, Esq.<br>Daniel C. Muniz, Esq.<br>SHEPPARD, MULLIN, RICHTER &<br>HAMPTON LLP<br>333 South Hope Street, 48th Floor<br>Los Angeles, California 90071-1448 | *Attorneys for Defendants*<br>**ENDICIA, INC. and PSI SYSTEMS, INC.**<br>Telephone:  (213) 620-1780<br>Facsimile:   (213) 620-1398<br><br>Email:<br>glong@sheppardmullin.com<br>djsmith@sheppardmullin.com<br>dmuniz@sheppardmullin.com |

__X__   **MAIL:**  I placed true and correct copies of the document(s) in sealed envelope(s) addressed to the above addressee(s).  I am readily familiar with Graves Law Office, P.C.'s practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

____   **EMAIL:** I transmitted true copies of the within document (without exhibits) electronically by means of email to the above addressee(s) at the above email address(es).

____   **HAND:**  I caused the within document to be hand-delivered to the above addressee(s) at the above address(es).

____   **FEDEX:** I caused the within document to be delivered by Federal Express addressee(s) at the above address(es).

I declare that I am employed by a member of the bar at whose direction such service was made.

Executed on March 3, 2008, at Los Angeles, California.


Tara Mitcheltree