**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499 ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge |
|---|---|

| Raymond Neal | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):      Attorneys Present for Defendant(s):

Not Present      Not Present

**Proceedings (In Chambers):**      **Claim Construction Order**

I.   INTRODUCTION

Pending before the Court is claim construction for the following United States Patents: U.S. Patent No. 5,717,597 ("the '597 Patent"); U.S. Patent No. 5,812,991 ("the '991 Patent"); U.S. Patent No. 6,208,980 ("the '980 Patent"); U.S. Patent No. 6,233,568 ("the '568 Patent"); U.S. Patent No. 6,249,777 ("the '777 Patent"); U.S. Patent No. 6,889,214 ("the '214 Patent")[1]; U.S. Patent No. 6,965,451 ("the '451 Patent"); and U.S. Patent No. 6,982,808 ("the '808 Patent"). The patents-in-suit are directed toward systems and methods for customers to purchase and store United States postage using a secure computer network. The postage can then be printed from a customer's home or office printer onto an envelope or label for mailing. Plaintiff contends that Defendants have developed technology that infringes the patents-in-suit.

Plaintiff filed its opening claim construction brief on November 24, 2008. Defendants filed their opposition brief on December 12, 2008, to which Plaintiff timely filed a reply brief. In January 2009, the Court reviewed the parties' claim construction briefs and found that the parties had asserted for construction 11 claim terms and more than 40

---

[1] The '214 Patent is very similar to the '777 Patent. Thus, because the '214 Patent is not especially critical for purposes of claim construction, the Court will only focus on the '777 Patent.

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499 ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

means-plus-function phrases. The Court concluded that this number was simply unworkable. Accordingly, the parties were instructed to refile another set of claim construction briefs, this time focusing on fewer claim terms. On February 9, 2009, the parties filed updated claim construction briefs limiting their disputes to seven claim terms and three means-plus-function limitations. The Court held hearings on claim construction on March 18, 2009 and May 8, 2009. This Order attempts to document the Court's construction of the disputed terms.

II.     BACKGROUND

The parties have a vast knowledge of what is contained within the complex patents and claims at issue. Thus, for the sake conciseness, the Court will not restate all that is contained within the patents and claims. Nonetheless, a brief background of the history of Stamps.com, PSI Systems, Inc., Endicia, Inc., and PC postage will be helpful, as will a recitation of the patents' abstracts.

　　　A.     <u>Brief</u> <u>History</u> <u>of</u> <u>PC</u> <u>Postage</u> [2]

In 1982, Dr. Harry Whitehouse founded PSI Associates and is Chief Development Officer at Endicia, Inc. In the early 1990s, Dr. Whitehouse and his company worked for the U.S. Postal Service ("USPS") writing facilities-based computer programs. To help the U.S. Postal Service add barcodes to postage, Dr. Whitehouse developed a word processing macro that could use existing laser printers to print POSTNET barcodes on the USPS's envelopes. Dr. Whitehouse then developed an improved system that would print the outbound and return address, the indicia, the FIM, logos and the POSTNET barcodes on any blank envelope. In 1988 through 1989, Dr. Whitehouse wrote the Envelope Manage program, which was a product that allowed the general public to use a PC to obtain Zip+4 address information over telephone lines and print the outbound and return addresses, FIM, barcodes, logos or graphics, and a variety of postage indicia onto a blank envelope using any

---

　　　[2] Plaintiff and Defendants have presented their differing views as to the "History of PC Postage." The Court's recitation of these facts does not infer adoption of any one parties' version of events. The Court is merely listing the parties' factual submissions for background purposes.

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

standard printer.  In 1991, Dr. Whitehouse presented "Smartmail" to the USPS, which involved a PC running Envelope Manager where the PC had the additional ability of debiting amounts of postage and replenishing the postage balance by virtue of a dial-up modem transaction to a remote server.  In August 1991, Dr. Whitehouse filed a patent application for his PC postage system.  Dr. Whitehouse has subsequently filed additional patent applications for improvements and additions to his PC postage system.

In 1994, Salim Kara, who subsequently transferred her patents to Plaintiff, filed a patent disclosing a type of postage system, in which postage value was stored on a memory device and attached to a customer's PC.  In 1996, Kara filed an application for the '991 Patent, which disclosed a system by which postage value could be requested by and delivered to a customer over a network (such as the Internet), thereby reducing the amount of security necessary on a customer's PC by utilizing the servers maintained by the company providing the service.  Subsequently, with the invention of the '777 Patent, systems offering postage over a network could be scaled to large communities of customers by employing multiple postage storage devices.  Later, the '214 Patent claimed a system in which account data for multiple customers was stored in each postage storage device and requests for postage were processed using a secure encryption tool.

In addition, Kara developed other patents for use in conjunction with PC postage.  With the invention of the '597 Patent, a user could customize postage indicia to include, for example, a company logo or birthday message.  The '980 Patent disclosed and claimed a way to request and receive outbound and return postage indicia.  The '568 Patent discloses a system that allows a user to compare postage rates of multiple providers, e.g. USPS, FedEx, and UPS.  The '451 and '808 Patent made it possible to use a standard printer to print postage using the systems developed by E-Stamp and Stamps.com.

Plaintiff asserts that on August 9, 1999 the USPS approved E-Stamp and Stamps.com to be the first two Internet postage providers.  In April 2001, Stamps.com acquired the entire patent portfolio of the company that Kara founded, E-Stamp Corporation, which owned the rights to Kara's patents in the field of Internet postage.

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

    B.    Patent Abstracts

        *1.*    *U.S. Patent No. 5,717,597*

The '597 Patent is directed to a system and method for printing a postage meter stamp, including a desired postage amount and a personalized postage indicia onto a label or an envelope for use in conjunction with a computer-generated greeting card.  A processor based system is programmed to interact with a customer to produce individualized greeting cards, printed address labels, and a printed postage meter stamp having a customized postage indicia.  The processor-based system will automatically calculate the postage due for a specific greeting card, print that postage amount as a meter stamp, interact with the customer to generate a personalized stamp indicia, encrypt selected information into a machine-readable format, and print the information entered by the customer in a selected format.

        *2.*    *U.S. Patent No. 5,812,991*

The '991 Patent is directed to a system and method for printing postage indicia, including a desired postage amount, onto a piece of mail.  A user takes a postal-dispensing device to, or establishes information communication with, an authorized agent of a postal authority in order to obtain a replenishment of the amount of postage stored within the portable postage dispensing device. A desired amount of postage is entered into the dispensing device by an authorized agent through a host processor-based system. The user is then able to access this stored postage at the user's location through a network of processor-based systems.  By using the network of processor-based systems the user is able to couple the portable dispensing device to a first processor-based system and then allow distribution of postage amounts to multiple networked processor-based systems.  These networked processor-based systems may then print an authorized postage indicia on a postal item.

        *3.*    *U.S. Patent No. 6,208,980*

The '980 Patent is directed to a system and method for printing an outbound and/or an associated return postage meter stamp, including a desired postage amount, onto a label

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

or onto an outbound document and/or an associated return document. A processor-based system is programmed to interact with a customer to produce individualized documents, printed address labels, and a printed postage meter stamp having in one embodiment, a customized postage indicia. The processor based system automatically calculates the postage due for each specific document, prints that postage amount as a meter stamp, interacts with the customer to generate a personalized stamp indicia, encrypts selected information into a machine-readable format, and prints the information entered by the customer in a selected format, all on the document or documents for transfer to the outside of a mailing envelope.

       4.     U.S. Patent No. 6,233,568

The '568 Patent is directed to a system and method for dispensing postage or other authorization information electronically by using a portable processor containing a maximum amount of preauthorized postage which can be applied to any piece of mail or other item. A plurality of shipping service providers may utilize the portable processor to store and dispense credit value for authorization of various shipping services. Accordingly, a user is presented with information regarding various shipping service providers fees and/or services associated with particular shipping/delivery parameters desired by the user in order to make an informed choice as to a most preferable method of shipment.

       5.     U.S. Patent No. 6,249,777

The '777 Patent is directed at a system and method for remote postage metering of postage indicia, including demanding a desired postage amount and subsequently printing the postage indicia onto a piece of mail. A user inputs certain necessary information, as well as additional desired information, into a local processor-based system. The local system then assembles a postage demand in suitable format and transmits the same to a remote postage-metering device. The remote postage metering device then verifies the demand for authority to demand and valid funding. Upon verification, the remote postage meter assembles a data packet representing an authorized postage indicia. The data packet is transmitted to the local system for printing. Printing of the postage indicia may be unaccompanied, or may include additional information. Such additional information may include destination and return address, machine readable routing or identification information, or a complete document to be posted.

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499 ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

     *6.     U.S. Patent No. 6,965,451*

The '451 Patent is directed to a method and system for printing information onto a print media. In one aspect the invention may be utilized by an on-line postage system to query one or more databases, containing set up data on one or more printer drivers, to determine set-up data for a user's printer. The invention may then be used to perform a printer configuration test to determine the set-up data for the user's printer if the set up data is not contained in the databases. The invention then stores the results of the printer configuration test in one or more of the databases for use by subsequent users.

     *7.     U.S. Patent No. 6,982,808*

The '808 Patent is directed toward a method and system for printing information onto a print media. In one aspect the present invention may be utilized by an on-line postage system to generate a print job for a virtualized sheet having an image of a envelope contained within a printable region of the virtualized sheet. The print job for the virtualized sheet is then forwarded to a printer which prints the postal indicia onto the envelope.

III.    DISCUSSION

    A.    <u>Legal Standard for Claim Construction</u>

In an action for patent infringement, the infringement analysis entails two steps: "The first step is determining the meaning and scope of the patent claims asserted to be infringed" and "[t]he second step is comparing the properly construed claims to the device accused of infringement." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd., 517 U.S. 370, 372 (1996). When applying the first step, the meaning of a disputed patent claim term remains a question of law for the Court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

During the construction, "[t]he words of a [patent] claim are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question . . . as of the [patent's] effective filing date." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). "Importantly, the person of

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*.  The Court then considers whether the ordinary meaning is consistent with the manner in which the patentee used the term in the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 986; *Phillips*, 415 F.3d at 1313-14.  The patent's specification is "the single best guide to [its] meaning." *Id*. at 1315.  Thus, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

The importance of the specification in interpreting a claim term is derived from the statutory requirement, 35 U.S.C. § 112, that the specification describe the claimed invention in "full, clear, concise, and exact terms."  As a result, the specification necessarily "informs the proper construction of the claims." *Phillips*, 415 F.3d at 1316.  "[T]he specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents." *Novartis Pharms. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1334-35 (Fed. Cir. 2004).

However, "the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).  Further, "an accused infringer cannot overcome the 'heavy presumption' that a claim term takes on its ordinary meaning simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." *Id*.  "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting Teleflex, 299 F.3d at 1327.

In addition, in construing claim terms, a court should also consider any other evidence intrinsic to the patent file, including "the complete record of the proceedings before the PTO [and] the prior art cited during the examination of the patent." *Id*. at 1317.  As with the specification, the prosecution history may demonstrate how the PTO and the applicant

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499 ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

understood the patent, as well as "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id*. However, the file evidence should not be given undue weight because the statements in it are part of "an ongoing negotiation" between the patent office and the inventor and thus "often lack[] the clarity" of the final product. *Id*.

Finally, the Court may also consider relevant extrinsic evidence, which is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id*. The Court uses this type of evidence with caution as the Federal Circuit has explained that extrinsic evidence is generally "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id*. (citations omitted). When used, extrinsic evidence cannot "vary or contradict" claim language, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 2003), but it can be useful "for a variety of purposes, such as to provide background [and] to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person with skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318.

    B.    <u>Construction of Disputed Patent Terms/Phrases</u>

The task before the Court is to provide the patent's terms "the meaning that [they] would have to a person of ordinary skill in the art in question" in the context of the entire patent. *Phillips*, 415 F.3d at 1313. Claim construction must begin with–and remain centered on–the claim language itself, for that is the language the patentee has chosen to particularly point out and distinctly claim the subject matter which the patentee regards as his invention. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) (citations omitted) (reaffirmed in *Phillips*, 415 F.3d at 1312). The claim language here does not provide much help in resolving the claim construction issues before the Court, as those issues generally turn on distinctions not made in the claims.

        1.    *"Postage Indicia" ('597 Patent, claim 7; '980 Patent, claim 35)*

Plaintiff contends that "postage indicia" should be construed to mean "a printed

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

designation on a mail piece indicating that an item of mail has been posted with an amount of postage, and including an arbitrary or fanciful graphical configuration that is printed in combination with the postal designation." Defendant, on the other hand, interprets "postage indicia" as follows: "an imprinted or affixed designation on mail reflecting a postal authorization, and including arbitrary or fanciful graphic configurations that are imprinted in combination with such official postal designation, as part of it."

Plaintiff argues that Defendants' interpretation improperly includes postage that is "affixed" rather than printed. Another difference between the parties' interpretations is whether the "postage indicia" "reflects a postal authorization," as Defendants propose, or whether it "indicat[es] that an item of mail has been posted with an amount of postage," as Plaintiff proposes.

Without reiterating the arguments raised in the parties' briefs, the Court construes "postage indicia" as follows: "A printed postage designation on a mail piece or label that includes the amount of postage, and may include an arbitrary or fanciful graphic configuration and/or a machine readable encrypted message." The Court's interpretation stays true to the claim language and the specification. Printing the amount of postage is the very object of the '597 Patent. (*See* '597 Patent, col. 2: 4-12, 2: 29-31.) The word "label" was added to accommodate Defendants' contention that the printed indicia can be transferred to a mailing envelope directly *or* "a transfer medium for subsequent transfer to a mailing envelope." (*See* The '597 Patent at 18: 1-9.) The illustrated figures also support the notion that the postage indicia may be printed on a label or directly on an envelope. (*See* '597 Patent, Figs. 16A and 16B.) Further, the arbitrary or fanciful graphic configurations appear to be optional as well. (*Compare* '980 Patent, Figs. 16B and 21.) Thus, the Court's definition states that the postage indicia "may" include these graphics. As Defendants point out, whether the "postage indicia" requires a machine readable encrypted message, is also an "optional" feature. (*See* '597 Patent, col. 16: 49-60.)

>   2.    *"Portable Processor Device" ('991 Patent, claims 7 and 76)*
>         *"Portable Memory Device" ('991 Patent, claim 42)*

Plaintiff argues that the term "portable processor device" should be construed as follows: "a device capable of being moved about that has a processor and memory built into

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499 ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

the device." Plaintiff also asserts the term "portable memory device" should be construed as "a device capable of being moved about that has a memory built into the device."

Defendants argue "portable processor device" should be construed as "a device comprising a processor and memory, wherein the device can be located at one of a plurality of locations while retaining its ability to store and access user accounts stored in its memory." And Defendants construe "portable memory device" the same.

The Court agrees with Defendants that Plaintiff's constructions are too simplistic. Portability in the computer science field means more than simply "capable of being moved about." However, Defendants' asserted construction is more restrictive than necessary. Both parties agree that the processor device contains memory and a processor. This is also supported by the specification, which states, "a processor device is constructed with a memory and having a processor controlling that memory." ('991 Patent, col. 3: 16-21.) Further, a person of ordinary skill in the art would know what the term "portable" means in computer science. Nonetheless, the Court defines "portable processor device" as "a device comprising a processor and memory, wherein the device can be located at a plurality of locations while retaining its functionality." The phrase "portable memory device" will be defined the same, only it will not include the word "processor." Thus, "portable memory device" is construed as "a memory device, wherein the device can be located at a plurality of locations while retaining its functionality."

3.  *"Plurality of Portable Memories" ('777 Patent, claim 3)*

Plaintiff construes the phrase "plurality of portable memories" as "two or more devices that are capable of being moved about that have a memory built into the device." Defendants construe this phrase as "two or more storage devices, wherein each of the devices can be located at one of a plurality of locations while retaining the ability to store the plurality of independent value credits."

It appears Defendants are attempting again to limit the disputed terms very narrowly.

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499 ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

As Plaintiff properly points out, however, while the Court must construe the claims in light of the specification and prosecution history, it must also avoid reading limitations from the specification into the claims. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004); *see also Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988).

Here, the patentee has not demonstrated a clear intention to limit the claim scope. Therefore, the Court adopts the following construction of "plurality of portable memories": "two or more memory storage devices, wherein each of the devices can be located at one of a plurality of locations while retaining their functionality."

        4.    *"Passed Blindly" ('991 Patent, claims 74, 76)*

Plaintiff contends that "passed blindly" should be construed as "to pass the information, without interpreting it to determine whether to pass it along to its destination." Defendants argue that this phrase should be construed as "to pass the information without interpreting it." The Court agrees with Plaintiff's interpretation. The declaration of Plaintiff's expert supports Plaintiff's construction as being that which would be understood by someone skilled in the art. Thus, the Court adopts Plaintiff's construction of "passed blindly."

        5.    *Print Media ('451 Patent, claim 17)*

Plaintiff asserts that "print media" should be construed as it is used in the '451 Patent: "an envelope, post card, label, or other mail piece." Defendant contends that "print media" should be construed as "paper, envelope, post card or label."

While the Court is troubled by the parties' inability to simply come to an agreement as to the construction of "print media," it will nonetheless indulge the parties by examining their arguments. Defendants argue that their construction is supported by the '451 Patent

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

where it states, "the postal indicium is printed on the print media, such as for example, an envelope, post card or label" ('451 Patent, col. 6: 8-10.)  And where the patent explains set-up procedures for a printer by stating, "[s]et-up information may include for example, how the printer rotates into landscape mode, what print media/paper the printer supports, what feed tray options the printer supports or other default information."  ('451 Patent, col. 8:63-67.)  Defendants assert that, because the specification says "print media/paper," paper must be included in the construction of "print media."

Plaintiff asserts that the use of the "/" distinguishes or separates print media from paper rather than making the terms synonymous.  In fact, when reading the specification as a whole, the patentee does not necessarily intend for the print media to include paper.  However, the patentee's intent does not restrict a user from using paper.  Thus, the best way to approach the definition of "print media" is to use a non-limiting term such as "include" so that other types of print media may be used.  The term "include" coincides with the specification's use of "for example" as an open-ended phrase that allows for the inclusion of other types of print media, even if those examples are not listed.  Accordingly, the Court construes "print media" as "print media includes envelopes, post cards, labels, and other mail pieces."

      6.  "Postal Indicia" ('808 Patent, claims 32, 39)

"Postal indicia" is different than the "postage indicia" phrase described above.  Plaintiff argues "postal indicia" should be construed to mean "a printed designation on a mail piece that the Post Office can scan to verify that the item of mail has been posted with an amount of postage."  Defendants assert the following construction: "postal markings, including but not limited to FIM barcodes and/or two-dimensional barcodes, printed, imprinted or affixed on a mail piece or label, a special mark."[3]

Defendants' primary argument is that the term "affixed" should be included in the definition because the '808 Patent specifically addresses printing on a label to be affixed

---

[3] The Court is unsure why Defendants use the phrase "a special mark" at the end of their construction.  This phrase is not addressed within the parties' briefs.

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499 ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

onto a mail piece. Plaintiff argues that the term "affixed" is misplaced. Even if the postal indicia is put onto a label, it would be "printed" on the label and then the label, not the postal indicia, would be affixed to the mail piece. Thus, it appears the term "label" should be included in the construction rather than "affixed."

Plaintiff attempts to argue that the '808 Patent teaches away from using labels because the machines at the post office can only read postal indicia printed a specific way onto an envelope. This argument is disingenuous, however. The very portion of the '808 Patent that Plaintiff cites in support of its argument actually uses the term "labels" as an option for printing. The specification states, "[t]he inability of most printers to comply with the tolerances set forth for FIM barcode location in the USPS automation system may require printing indicia-based postage onto labels and/or envelopes with the FIM barcode pre-printed onto them." ('808 Patent, col. 2: 55-59.) Further, like the '451 Patent, the '808 Patent specification contains the language, "the postal indicium is printed on the print media, such as for example, an envelope, post card or label." ('808 Patent, col. 6: 29-31.) Accordingly, the Court concludes the term "label" shall be included in the definition of "postal indicia." However, the term "affixed" will not be included.

Defendants' next argument is that the postal indicia must include a barcode of some kind, but not necessarily the amount of postage. Plaintiff argues the postal indicia *must* include an amount of postage. Including the amount of postage within the postal indicia is supported by the illustrations in the '808 Patent.

With regard to the FIM barcode, Plaintiff concedes that the postal indicia may include an FIM barcode, but it may also contain more/other information. Defendants' construction does not dispute Plaintiff's assertion. Defendants' construction states that the postal indicia has "postal markings, including but not limited to FIM barcodes and/or two-dimensional barcodes." In fact, the language proposed by Defendants is in line with the specification and claim 7 of the '808 Patent where it states, "printing said postal indicia comprises printing an FIM." "Comprise," similar to the word "include," is open-ended meaning that the postal indicia must include an FIM but may include more. Accordingly, the Court adopts Defendants' proposed construction with the following modifications: "postal indicia" shall be construed as, "postal markings including but not limited to the amount of postage, and FIM barcodes and/or two-dimensional barcodes, printed or imprinted on a mail piece or

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

label."

    C.    <u>Construction of Contested Mean-Plus-Function Limitations</u>

    Special rules are applicable to the construction of "means-plus-function" terms under 35 U.S.C. § 112(6).  When a limitation recites "means for" performing a step or function, a presumption arises that the inventor intended to invoke section 112(6).  *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1427 (Fed. Cir. 1997).  In construing means-plus-function claim limitations, a court must first define the particular function recited, and then identify "the corresponding structure, material, or acts described in the specification."  *Id*. at 1428.  The limitation is then construed to encompass "the corresponding structure, material, or acts described in the specification," as well as all "equivalents thereof."  35 U.S.C. § 112(6).  The purpose of requiring the description of structure in the specification is to prevent a patentee from claiming all structures that could perform a particular function.  *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003).

    Defendants give the following example for understanding means-plus-function limitations: a patent to a mousetrap might include, as one claim element, a "means for snapping the trap shut."  The patent specification might, for example, describe a "steel spring" as the means or "structure" for performing the "snapping the trap shut" function.  Such a claim would cover a mousetrap that performed the "snapping the trap shut" function using structure that is identical or equivalent to a "steel spring."  If an accused mousetrap used, for example, a rubber band to perform the claimed function, a court would have to decide whether a rubber band and a steel spring were "equivalent" in the context of the invention.

    If the patentee fails to describe the structure to perform the claimed function in the patent, the entire claim is invalid for indefiniteness under 35 U.S.C. § 112.  *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 948 (Fed. Cir. 2007) ("[T]he applicant must indicate in the specification what structure constitutes the means."); *Med. Instrumentation & Diagnostics Corp.*, 344 F.3d at 1211 ("If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee . . . is attempting to claim in functional terms unbound by any reference to

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

structure in the specification."). Defendants contend that each of the three means-plus-function limitations selected for construction are indefinite, purportedly because the specifications do not disclose a sufficiently detailed algorithm for performing the recited function.

A party asserting that a claim is indefinite has the burden of showing that the claim is indefinite by clear and convincing evidence. *Allvoice Computing PLC v. Nuance Comms., Inc.*, 504 F.3d 1236, 1244 (Fed. Cir. 2007). A claim is not indefinite merely because it poses a difficult issue of claim construction. *Bancorp Serv., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004); *S3, Inc. v. nVidia Corp.*, 259 F.3d 1364, 1369 (Fed. Cir. 2001). Thus, if the meaning of the claim is discernible, "even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, [the Federal Circuit has] held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Bancorp*, 359 F.3d at 1371 (quoting, *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). "Close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Id.*

"In ruling on a claim of patent indefiniteness, a court must determine whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Bancorp*, 359 F.3d at 1371. This is true with all claim limitations, including those drafted in means-plus-function form. *See Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999).

> 1. *Means for Interfacing with a Document Generation Program ('980 Patent, Claim 34, 35)*

Defendants argue that the following means-plus-function limitation should be found invalid for indefiniteness: "Means for interfacing with a document generation program generating an outbound document to be associated with said outbound postage indicia." In particular, Defendants assert that the specification does not describe an algorithm by which the claimed computer system "interfac[es] with a document generation program generating an outbound document to be associated with said outbound postage indicia."

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

Plaintiff first argues that Defendants are overstating the function. Plaintiff states the function is "interfacing with a document generation program." And the remainder of the phrase cited by Defendants is merely descriptive language. Plaintiff notes that the Federal Circuit has cautioned against including such descriptive language in the identification of the function in a means-plus-function claim element. *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1368, 1372 (Fed. Cir. 2002) (construing the function of the claim term "means connected to said fluid receiver and said source of fresh fluid, for equalizing the fluid flow into said fluid receiver and out of said source of fluid" to be simply "means for equalizing the fluid flow.")

Here, as Plaintiff contends, it appears the language following "means for interfacing with a document generation program" is descriptive and does not add more to the function element. The first part of Claim 34 states, "A system for generating an outbound postage indicia and an associated return postage indicia, said system comprising: means for interfacing with a document generation program . . . ." The last part of the element at issue does nothing more than restate the system's purpose as described in the claim introduction. Accordingly, the Court agrees with Plaintiff that the function of this claim element is to "interfac[e] with a document generation program."

Now that the Court has identified the function, it must look to the specification to find the corresponding structure. If there is no structure, the element is indefinite. Plaintiff argues that the structure of this means-plus-function element is described in the '980 Patent specification as:

> An interface program is used to integrate the E-STAMP program with the personalized card generating program. The two application programs will be coordinated. For example, graphic configurations of postage indicia that correspond to the type of cards and messages generated by the card generating program. Likewise, information regarding the types of documents being generated may be intercommunicated so as to allow the generation of a desired number of postage indicia and their proper placement on the document(s).

('980 Patent, col. 16: 16-26.)

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499 ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

In light of the description of the interface program in the specification, one of ordinary skill in the art would have understood what the patentees were claiming. (*See* McDaniel Decl. ¶¶ 28-29.) The Federal Circuit, when examining the cases Defendants cite in support of its indefinite argument, found no structure whatsoever within the relevant specifications. *See Aristocrat Tech. Austl. Pty Ltd. v. Int'l Gaming Tech.*, 521 F.3d 1328 (Fed. Cir. 2008); *Biomedino, LLC*, 490 F.3d 946; *Finstar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323 (Fed. Cir. 2008). Further, "[i]n software cases . . . algorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art." *Allvoice*, 504 F.3d at 1245 (citations omitted).

Here, Plaintiff has shown that there is structure. And that structure can be sufficiently understood by one of skill in the art. (*See* McDaniel Decl. ¶¶ 28-29.) Thus, it appears Defendants have not met their high burden of showing that the claim is indefinite. Further, the Court adopts Plaintiff's proposed structure as follows: "an interface program that coordinates a document generation program and a postage generation program, and facilitates the communication of data between the document generation program and postage generation program."

> 2.  *Means for Controlling the Transmission of Said Demand from Said First System to Said Remote System over Said Public Network ('777 Patent, Claims 55, 63)*

The '777 patent describes a system and method that allows a user to purchase a desired amount of postage at a location remote from a postal metering device, the postage being transmitted to the user over a network, such as the Internet. The request sent from the user's computer is referred to as the "demand." The remote system that receives the demand and provides the desired amount of postage from the system of a postage provider, such as Stamps.com, PSI, or the United States Postal Service. Claim 55, from which asserted claim 63 depends, contains the limitation "means for controlling the transmission of said demand from said first system to said remote system over said public network."

The function of this limitation is to "control[] the transmission of a demand from

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499 ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

said first system to said remote system over a public network." Plaintiff argues that the specification links the recited function to a "demand program" that is programmed to require a password, to transmit a demand using a "secure sockets layer" protocol, or to transmit a partially encrypted demand. Defendants argue that a "demand program" is not structure, but, rather, a description of an algorithm is required.

The specification states, "[t]he Demand program demands the postage from a remote postage metering device physically located away from the first PC." ('777 Patent, col. 6: 62-64.) The specification explains that any system for dispensing "postage on demand" to a user's computer must "maintain strict controls on the issuing" of postage indicia. ('777 Patent, col. 2:61-67.) The patent then teaches that the invention of the '777 Patent controls the issuance of postage indicia by, among other things, providing that "[t]he postage demands are verified to ensure such demands are authorized to receive indicia of postage to be funded in accordance with the demand." ('777 Patent, col. 3:16-22.)

The specification goes on to explain the authorization process or the "means for controlling the transmission." "Upon activation of the demand program, the user is asked for, and the process accepts, a user password (step 201). At step 202, the Demand program determines if the accepted password is valid. If the password is not valid, the process returns to step 201, thus preventing unauthorized access to postage. If the password is valid, the process continues to step 203." ('777 Patent, col. 8: 53-61.) Plaintiff states that there are at least two independently sufficient descriptions in the specification of the '777 Patent that correspond to the verification of a demand for postage to ensure the demand is authorized, or in other words, to control transmission of the demand. Further, Plaintiff notes that the structure is illustrated in Figure 2 of the '777 Patent.

The Court finds that, given the examples of structure located in the specification that Plaintiff cites, there is sufficient structure to overcome Defendants' contention of indefiniteness. Thus, the Court adopts Plaintiff's proposed structure for the function "controlling the transmission of a demand from a first system to a remote system over a public network" as follows: "a client processor-based system implementing the demand program programmed to require entry of a password, to transmit a demand using an SSL

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

protocol, or to transmit a partially encrypted demand."

> 3. *Means for Accepting Information Associated with Said Transaction Parameters from a General Purpose Computer Program Operating on Said General Multi-Purpose Processor-Based System ('568 Patent, Claim 23)*

The '568 patent claims a system and method for calculating shipping fees from multiple providers. Specifically, the '568 Patent teaches a general multi-purpose computer system that creates valid authorization for multiple providers. Claim 23 is directed to the receiving of the user's shipping information from a "general purpose" computer program resident on the user's computer. The function of this means-plus-function limitation is "accepting information associated with said transaction parameters from a general purpose computer program operating on said general multi-purpose processor-based system."

Defendants argue "[i]n cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, [the Federal Circuit] has consistently required that the structure described in the specification be more than simply a general-purpose computer or microprocessor." *Aristocrat*, 521 F.3d at 1333. Here, the means-plus-function limitation includes a "general-purpose computer," thus, Defendants argue that the specification must include an algorithm to instruct the skilled artisan.

Plaintiff states that the '568 Patent discloses an algorithm that corresponds to this limitation. This algorithm, represented by the flow chart depicted in Figure 7, is also further described in the specification. (*See* '568 Patent, col. 19: 55-60.)

Again, taking into consideration the flow charts and the specification language, there appears to be sufficient structure presented. Accordingly, the Court adopts Plaintiff's proposed structure for the limitation as follows: "a processor-based system programmed to accept the contents of a return address box or to accept the contents of an address box." The Court's constructions of the means-plus-function limitations also cover "equivalents" or "equivalent structures" as required by 35 U.S.C. § 112.

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7499  ODW (CTx) | Date | June 15, 2009 |
|---|---|---|---|
| Title | Stamps.com v. Endicia, Inc. and PSI Systems, Inc. | | |

IV.   CONCLUSION

Based on the foregoing, the Court construes the disputed claim terms as described in each section above.  In addition, with regard to the three disputed means-plus-function limitations, Defendants' have not proven indefiniteness by clear and convincing evidence; thus, Defendants' arguments fail.

----   :   00

Initials of Preparer   RGN